Irma Alicia Rodríguez Avilés, demandante y recurrida, *v.* Jorge Rodríguez Beruff, demandado y peticionario.

Número: CE-85-554        Resuelto: 27 de junio de 1986

618

*Luis R. Dávila Colón, Sonia A. Rodríguez,* abogados del peticionario; *Beatriz Vázquez de Acarón,* abogada de la recurrida.

EL JUEZ ASOCIADO SEÑOR HERNÁNDEZ DENTON emitió la opinión del Tribunal.

El 2 de octubre de 1974 Irma Alicia Rodríguez Avilés y Jorge Rodríguez Beruff se divorciaron; disolvieron así un matrimonio contraído en 1970 y en el cual habían procreado una niña. Al decretarse el divorcio, el señor Rodríguez Beruff mediante estipulación se comprometió a pagar la cantidad de $200 mensuales por concepto de pensión alimenticia para la hija que quedó bajo la custodia y patria potestad de su madre.

El señor Rodríguez Beruff cumplió regularmente con su obligación alimenticia hasta julio de 1975 cuando viajó a Europa a terminar sus estudios doctorales. Al regresar en julio de 1979 reanudó sus pagos. El 8 de mayo de 1985 la señora Rodríguez Avilés presentó moción en el tribunal de instancia para solicitar condena por desacato. Alegó que el señor Rodríguez Beruff no había cumplido con la estipulación sobre alimentos contenida en la sentencia de divorcio de 2 de octubre de 1974, y que adeudaba la suma de $10,400.

Luego de varios incidentes procesales, el tribunal de instancia concluyó que las pensiones adeudadas entre el 1975 y el 1979 no habían prescrito. Declaró al señor Rodríguez Beruff incurso en desacato.

En *certiorari* concedimos término a la señora Rodríguez Avilés para que mostrara causa por la cual no debía revocarse esa determinación. Tenemos el beneficio de su comparecencia. El caso nos ofrece una oportunidad para aclarar las normas pertinentes en un área de derecho caracterizado por controversias personales muy intensas.

I

¿Prescriben por el transcurso de cinco años las acciones de menores para reclamar pensiones alimenticias vencidas? Resolver esta controversia requiere enfrentarnos nuevamente al problema creado por la adopción en 1904 del Código de Enjuiciamiento Civil proveniente de California y su relación con las

normas del Código Civil. *Cf. De Jesús* v. *Chardón*, 116 D.P.R. 238 (1985).

Desde el derecho romano existe la máxima: *contra no valenten agere non currit praescriptio*. Esta máxima pretendía proteger a aquellos que no podían ejercitar sus derechos al verse desprovistos de éstos por el efecto de la prescripción extintiva. (¹) R. M. Salvat, *Tratado de derecho civil argentino: Obligaciones en general*, 6ta ed., Buenos Aires, Tip. Ed. Argentina, 1956, T. III, pág. 437. El Código Civil francés comenzó el proceso de apartarse del antiguo sistema al consagrar el principio de que la prescripción corre contra todo tipo de personas salvo que exista una excepción en ley. Salvat, *op. cit.*, pág. 438.

En la actualidad la excepción principal a la norma de que la prescripción corre contra todas las personas es en los casos de los incapacitados y los menores. La mayoría de las jurisdicciones civilistas permiten que la prescripción extintiva se aplique a los menores en ciertas circunstancias. Según una de estas modalidades, la prescripción corre mientras los menores están bajo la patria potestad de sus padres o bajo representación legal. (²) Otros países siguen esta misma norma con la variante de que cuando hay una reclamación entre padres e hijos la prescripción se suspende siempre. (³) En algunos

---

(¹) *Corpus Juris Civilis*, Código, Libro 7mo, Tít. 40, Ley 1ra, Sec. 2, *in fine*: *"Quis enim incusare eos poterit, si hoc non frecerint, quod, etsi maluerint, minime odimplere lege obviante valebant?*, (porque, ¿quién podrá acusarlos, si no hubieren hecho lo que, aunque hubieran querido, no podrían en manera alguna ejecutar por impedírselo la ley?)."

(²) Esta es la norma adoptada en Argentina, Art. 3966, Código Civil de Argentina. Véase G. A. Borda, *Tratado de derecho civil argentino: Obligaciones II*, 4ta ed., Buenos Aires, Ed. Perrot, 1965, págs. 30–31.

(³) Alemania, Arts. 194, 204, 206, Código Civil de Alemania. Véase K. Larens, *Derecho Civil: Parte General* (M. Izquierdo y Macías-Picavea, trads.), Madrid, Ed. Revista Derecho Privado, 1978, págs. 327–337. En otras jurisdicciones la prescripción entre padres e hijos *sólo* se suspende mientras los padres ejercen la patria potestad. Italia, Arts. 2941(2), 2942, Código Civil de Italia; Portugal, Arts. 318(b), 320, Código Civil de Portugal; Perú,

países, como en Francia, sólo en casos de prestaciones periódicas como la de alimentos se aplica la prescripción contra los menores. (⁴) Finalmente, en España la prescripción siempre corre contra los menores, (⁵) Art. 1932. (⁶) De los países cuyos estatutos hemos estudiado el único que suspende siempre los efectos de la prescripción contra los menores es Panamá. Art. 1671, Código Civil de Panamá.

## II

■ La obligación alimenticia cuya cuantía depende de los recursos del alimentante y las necesidades del alimentista, Art. 146 del Código Civil, 31 L.P.R.A. sec. 565, "tiene su fundamento en el derecho a la vida configurado como un derecho de la personalidad". P. Beltrán De Heredia, *La obligación legal de alimentos entre parientes*, Salamanca, Pubs. Univ. Salamanca, 1958, pág. 33. La obligación de proveerlos surge

---

Art. 1157, Código Civil de Perú; Méjico, Arts. 1165–1167, Código Civil de Méjico; Costa Rica, Art. 880, Código Civil de Costa Rica; Guatemala, Art. 1505, Código Civil de Guatemala; Brasil, Art. 168, Código Civil de Brasil.

(⁴) Arts. 2252, 2277 y 2278, Código Civil de Francia. Véanse: H., L. y J. Mazeaud, *Leçons de Droit Civil*, Paris, Ed. Montchrestien, 1978, T. 2, Vol. 1, págs. 1167–1168; *Encyclopédie Dalloz, Repertoire de Droit Civil*, Paris, 1954, Sec. 459, pág. 40; A. Weill y F. Terré, *Droit Civil: Les Obligations*, 2da ed., Nancy, Francia, Ed. Dalloz, 1975, págs. 1107–1108; M. Planiol y G. Ripert, *Tratado práctico de derecho civil francés* (M. Díaz Cruz, trad.), La Habana, Ed. Cultural, 1936, T. 7, págs. 666–667. Norma similar se sigue en Bélgica, Arts. 2252, 2277 y 2278, Código Civil de Bélgica; Venezuela, Arts. 1964–1965, 1982–1985, Código Civil de Venezuela; República Dominicana, Arts. 2252, 2277 y 2278, Código Civil de República Dominicana; Uruguay, Arts. 1222, 1242 y 1243, Código Civil de Uruguay.

(⁵) Norma similar tiene Cuba, Art. 1932, Código Civil de Cuba, y Bolivia, Art. 1502, Código Civil de Bolivia. Esta era la norma que regía en Puerto Rico hasta el 1904 en que se aprobó el Código de Enjuiciamiento Civil.

(⁶) Las Partidas, inspiradas por el derecho romano, establecían la suspensión de la prescripción cuyo término era menor de veinte (20) años cuando el titular del derecho era un menor. Partida 6ta, Tít. 9no, Ley 9na. Al aprobarse el Código Civil español y a tono con las corrientes modernas del momento se abandona esa postura.

desde el momento en que el alimentista los necesite, pero sólo se deben desde el momento en que se presenta la demanda. Art. 147 del Código Civil, 31 L.P.R.A. sec. 566.

■ Es precisamente el carácter sui géneris de esta obligación lo que motivó al legislador a imponer en el Art. 1866 un término prescriptivo de cinco años para este tipo de acciones. Su propósito es proteger al deudor contra la acumulación indefinida de su deuda. *Brea* v. *Pardo*, 113 D.P.R. 217, 223 (1982) ; J. M. Manresa, *Comentarios al Código Civil español*, 6ta ed., Madrid, Ed. Reus, 1973, T. XII, págs. 865, 1205; J. Castán Tobeñas, *Derecho civil español, común y foral*, 10ma ed., Madrid, Ed. Reus, 1963, T. 1, Vol. 2, pág. 843; M. Planiol y G. Ripert, *Tratado práctico de derecho civil francés* (M. Díaz Cruz, trad.), La Habana, Ed. Cultural, 1936, T. 7, Vol. 2, págs. 666–667. La prescripción del Art. 1866 del Código Civil también está predicada en una presunción de pago. Si el alimentista con plena capacidad legal no reclamó su derecho por un período largo de tiempo, debemos presumir que los alimentos fueron pagados o que no los necesitaba. Además, el Art. 1866 pretende proteger al deudor no sólo de reclamaciones remotas, razón de ser de toda prescripción extintiva, ([7]) sino de que la deuda no aumente a un nivel que afecta la solvencia económica del deudor. Q. M. Scaevola, *Código Civil*, Madrid, Ed. Reus, 1965, T. 32, Vol. 2, págs. 333–334.

---

([7]) Borda, *op. cit.*, pág. 7, resume claramente la razón de ser de la prescripción: "La ley protege los derechos subjetivos, pero no ampara la desidia, la negligencia, el abandono. Los derechos no pueden mantener su vigencia indefinidamente en el tiempo, no obstante, el desinterés del titular, porque *ello conspira contra el orden y la seguridad*. Transcurridos ciertos plazos legales, mediando petición de parte interesada, la ley declara *prescriptos* los derechos no ejercidos." F. Sánchez Román, *Estudios de derecho civil*, 2da ed., Madrid, Ed. Sucesores de Rivadeneyra, 1891, T. III, pág. 267; R. Bonet, *Código Civil Comentado*, Madrid, Ed. Aguilar, 1962, pág. 1581.

III

A

En nuestro ordenamiento jurídico la norma primaria sobre prescripción extintiva dispone que "los derechos y acciones se extinguen por la prescripción" que corre contra todas las personas en los términos provistos por ley. Art. 1832 del Código Civil, 31 L.P.R.A. sec. 5243. El Código Civil dispone un término de cinco (5) años para exigir el pago de pensiones alimenticias atrasadas. Art. 1866, 31 L.P.R.A. sec. 5296; *Brea* v. *Pardo,* supra, pág. 222.

No obstante, el Art. 40 del Código de Enjuiciamiento Civil, 32 L.P.R.A. sec. 254, adoptado en 1904 y proveniente de California, (8) dispone:

Si la persona con derecho a ejercitar una acción, que no sea la reivindicatoria de propiedad inmueble, fuese al tiempo de nacer la causa de la acción:

1. Menor de edad; . . . el tiempo que dure tal incapacidad no se considerará parte del tiempo fijado para empezar a ejercitar la acción.

■ Al enfrentarnos al problema creado por la aparente incompatibilidad existente entre el Art. 1832 del Código Civil y el Art. 40 del Código de Enjuiciamiento Civil, resolvimos que el Art. 40 de manera implícita modificó sustancialmente el Art. 1832, *Ibáñez* v. *Diviñó*, 22 D.P.R. 518, 522 (1915), y que por ende como norma general la prescripción de las acciones no corre contra menores. Nunca nos hemos apartado de esa posición. Por el contrario, la hemos reafirmado. *Gómez* v. *Marques,* 81 D.P.R. 721, 727 (1960) ; *Márquez* v. *Tribl. Superior,* 85 D.P.R. 559, 562 (1962). Sin embargo, este Tribunal me-

---

(8)La norma del Art. 40 se origina en el estatuto inglés de 1623 [21 Jac. I, c. 16 (1623)]. Véase *Developments of the Law—Statutes of Limitations,* 63 Harv. L. Rev. 1177, 1229 (1950).

diante *dictum* ha dicho que la prescripción de cinco (5 )años del Art. 1866 también corre contra los menores. Aunque en *Rodríguez v. Morales*, 72 D.P.R. 35 (1951), y en *Sosa Rodríguez v. Rivas Sariego*, 105 D.P.R. 518 (1976), examinamos controversias sobre pensiones atrasadas, no fue hasta *Brea v. Pardo*, supra, que por primera vez tuvimos oportunidad de expresarnos brevemente sobre si el término de cinco (5) años ordenado por el Art. 1866 era aplicable a una acción sobre alimentos de un hijo. En ninguna de estas ocasiones tuvimos una oportunidad, como la tenemos ahora, de analizar esta controversia y aclarar las normas pertinentes sobre prescripción en los casos de obligaciones alimenticias dimanantes del Art. 143 del Código Civil. *Guadalupe Viera v. Morell*, 115 D.P.R. 1 (1983) ; L. Gómez Morán, *La Posición Jurídica del Menor*, Madrid, Inst. Ed. Reus, 1947, pág. 339; Beltrán De Heredia, *op. cit.*

## B

Ante este trasfondo de derecho comparado, sin duda, la doctrina adelantada por el padre que postula la prescripción de las pensiones alimenticias atrasadas inclusive cuando el reclamante es un menor, "no carece de lógica y . . . es un planteamiento intelectualmente honesto . . .". *Márquez v. Tribl. Superior*, supra, pág. 561. Así lo intimaba nuestra jurisprudencia previa. *Rodríguez v. Morales*, supra; *Sosa Rodríguez v. Rivas Sariego*, supra; *Brea v. Pardo*, supra. Más aún, como expusimos anteriormente, esta es la doctrina vigente en Francia y tiene gran acogida entre diversas jurisdicciones civilistas.

Sin embargo, un cuidadoso análisis de la legislación vigente y de nuestra jurisprudencia nos obliga a concluir que la adopción en 1904 del Art. 40 del Código de Enjuiciamiento Civil significó el abandono de la doctrina española sobre este tema. Al presente, la norma en nuestra jurisdicción es que la

prescripción no corre en perjuicio de los menores o incapacitados.

■ Hace apenas un año, en *De Jesús* v. *Chardón*, supra, trazamos el paso azaroso de nuestra doctrina de prescripción contra menores. Aclaramos "que el tiempo que dure la minoría de edad no se considerará parte del tiempo fijado para empezar la acción". íbid., pág. 250. Reafirmamos entonces la norma del Art. 40 del Código de Enjuiciamiento y de *Ibáñez* v. *Diviñó*, supra. Más aún, extendimos esa regla a las acciones heredadas por los menores, apartándonos de lo resuelto en un caso del Primer Circuito Federal de Apelaciones, *Bussati* v. *Grace & Compañía, Puerto Rico*, 396 F.2d 233 (1er Cir. 1968).

En California, jurisdicción de origen del Art. 40, se ha sostenido que la prescripción de cuatro años fijada en ese estado para la reclamación de pensiones alimenticias no corre contra los menores. *Amie* v. *Superior Court of Riverside County*, 160 Cal. Rptr. 271 (1979) ; *Ruddock* v. *Ohls*, 154 Cal. Rptr. 87 (1979) ; *Van Buskirk* v. *Todd*, 75 Cal. Rptr. 280 (1969). En *Van Buskirk*, el demandado alegó que la reclamación de alimentos en su contra estaba prescrita, pues la deuda tenía más de cuatro años. Al rechazar este argumento, el Tribunal de Apelaciones reiteró que el plazo de prescripción de cuatro años no transcurre durante la minoridad del alimentista. íbid., pág. 285.

■ No obstante las razones de orden público anteriormente descritas que informan las normas de prescripción extintiva y en específico el plazo de cinco (5) años del Art. 1866, el legislador a través del Art. 40 del Código de Enjuiciamiento Civil optó por anteponer el interés de proteger al menor sobre el interés general protegido por la prescripción. "Puede decirse que la norma sobre los términos prescriptivos se basa en consideraciones de orden y de procedimiento mientras que la norma que comprende el Art. 40 es una de justicia." *Márquez*

v. *Tribl. Superior*, supra, págs. 562–563. A través del Art. 40 el menor queda protegido contra una posible negligencia de su padre o tutor. En nuestra jurisdicción este interés prevalece por encima de los intereses que pretende proteger la prescripción extintiva.

■ Por las razones expuestas anteriormente, resolvemos que la prescripción del Art. 1866 no corre contra los menores. Aunque la tendencia moderna es a favor de establecer un término prescriptivo para la radicación de las acciones por pensión alimenticia adeudadas a menores, la norma contenida en el Art. 40 del Código de Enjuiciamiento Civil es la ley vigente. Sostener lo contrario conllevaría enmendar judicialmente una disposición expresa de la ley para sustituirla por otra pautada por este cuerpo.

Esta decisión está fundada en una interpretación del derecho vigente en interacción con la doctrina jurisprudencial. Cualquier modificación o cambio sobre los períodos prescriptivos corresponde, según nuestro sistema constitucional, a la Rama Legislativa.

## IV

Una vez establecido que las pensiones reclamadas no han prescrito, debemos resolver si en este caso procede declarar al señor Rodríguez Beruff incurso en desacato.

■ Reiteradamente hemos resuelto que el procedimiento de desacato está disponible para asegurar el cobro de pensiones alimenticias atrasadas. *Otero Fernández* v. *Alguacil*, 116 D.P.R. 733 (1985); *Sosa Rodríguez* v. *Rivas Sariego*, supra; *López* v. *Corte de Distrito de Guayama*, 31 D.P.R. 137, 144–145 (1922); *Espinosa* v. *Ramírez, Alcaide de Cárcel*, 72 D.P.R. 901 (1951). Razones de orden público cimentadas en el interés de proteger al alimentista y asegurar su subsistencia aconsejan esta norma. Sin embargo, el mecanismo del desacato y el encarcelamiento del alimentante debe ser el úl-

timo método a utilizarse por el tribunal. El desacato "por ser de naturaleza reparadora y no punitiva debe utilizarse con prudencia, por la privación de libertad que conlleva, y limitado a aquellos casos en que hubiera una *desobediencia voluntaria y obstinada* a una orden o sentencia concediendo alimentos *y en que la continuada encarcelación del desacatador pueda surtir los efectos de dar al alimentista la reparación necesaria*". (Énfasis suplido.) *Sosa Rodríguez v. Rivas Sariego*, supra, pág. 522; *Espinosa v. Ramírez, Alcaide de Cárcel*, supra, pág. 904; *Villa v. Corte*, 45 D.P.R. 879, 900 (1933).

En el presente caso al padre alimentante se le reclama el pago de pensiones remotas. Las pensiones adeudadas corresponden a los años 1975 a 1979. Durante este tiempo hizo estudios conducentes a un grado doctoral con el propósito de mejorar su preparación académica. Mientras estuvo fuera, la madre no exigió las pensiones correspondientes. No fue hasta marzo de 1985, casi diez años después de su viaje, que se presentó la reclamación que origina este pleito. Desde que el señor Rodríguez Beruff regresó de su viaje de estudios ha cumplido regularmente con su obligación alimenticia.

En fecha reciente hemos reiterado la obligación de los tribunales de instancia de ser "fuertes y rigurosos en lograr que [los] padres cumplan con su deber [alimenticio]", *Valencia, Ex parte*, 116 D.P.R. 909, 912 (1986), y de que los procedimientos de alimentos se tramiten rápidamente, *Martínez v. Rivera Hernández*, 116 D.P.R. 164 (1985); *Quiñones v. Jiménez Conde*, 117 D.P.R. 1 (1986). Sin embargo, debemos reafirmar, además, el deber que tiene el padre con la patria potestad y custodia de reclamar los alimentos a tiempo. La razón de ser de las pensiones alimenticias, predicadas en la necesidad del alimentista, pierde su eficacia luego de pasar un largo número de años. B. Piñar López, *La prestación alimenticia en nuestro derecho civil*, 199 Rev. Gen. Legis. Jur. 7, 12 (1955).

■ Antes de declarar al padre alimentante incurso en desacato y ordenar su encarcelamiento por no haber pagado deudas remotas, el tribunal debe examinar cuidadosamente los intereses de las partes y en especial del menor. Se debe asegurar de que el padre alimentante esté cumpliendo al presente el pago de las pensiones. Debe indagar cuáles fueron las razones por las cuales se acumuló la deuda. Más aún, debe inquirir qué razones tuvo el padre custodio para no haber sido diligente al reclamar las pensiones. Deben examinarse las necesidades inmediatas de los menores. *Cf. Sosa Rodríguez* v. *Rivas Sariego*, supra, pág. 522. El hecho de que la deuda no haya prescrito necesariamente no obliga al tribunal a declarar al deudor incurso en desacato.

■ Cuando la reclamación de alimentos se refiere a deudas remotas, como en el caso de autos y se comprueba a satisfacción del tribunal que el padre alimentante al presente está cumpliendo con su obligación alimenticia y que no existe necesidad inmediata del menor que se deba atender con la deuda que se reclama, el juez deberá aprobar un plan de pago que le permita al deudor ponerse al día sin necesidad de advenir a la ruina económica. *Cf. Quiñones* v. *Jiménez Conde*, supra. El tribunal deberá diseñar un plan que sea económicamente viable para el alimentante y que satisfaga las necesidades del menor. El criterio rector en estos casos es su razonabilidad.

■ En casos como éste, donde las deudas reclamadas son remotas y no se ha demostrado una necesidad inmediata del menor que requiera el pago de la deuda en su totalidad, sólo si el padre alimentante se niega voluntaria y obstinadamente a cumplir con el plan de pago aprobado procede que se le declare incurso en desacato.

El presente caso es un claro ejemplo de la sabiduría de esta norma. El señor Rodríguez Beruff dejó de cumplir su responsabilidad alimenticia desde 1975 a 1979. No nos compete evaluar las razones que tuvo para hacer ésto. Durante

ese período la madre, quien tenía la patria potestad y custodia de la menor, fundada su posición en la existencia de un supuesto acuerdo extrajudicial de las partes, no exigió que el aquí peticionario cumpliera con su obligación. Por otro lado, él tampoco acudió ante el tribunal para que éste le rebajara el monto de la pensión.

En 1979 el señor Rodríguez Beruff reanudó el pago de sus pensiones. Hasta hoy ha cumplido satisfactoriamente con su obligación. No es hasta 1985 que la señora Rodríguez Avilés presenta a nombre de la menor una acción judicial para cobrar las pensiones dejadas de pagar. No se adujo una necesidad económica inmediata por parte de la menor. Ante este cuadro fáctico no se justifica declarar al peticionario incurso en desacato. No estamos ante un padre que desobedece voluntaria y obstinadamente su obligación inmediata de alimentar. Es cuestionable, y el foro de instancia deberá determinarlo, si exigirle al padre que satisfaga ahora en un solo pago esa deuda contribuye a los objetivos primarios de su obligación alimenticia. Independientemente de lo reprochable que pueda ser el que él haya dejado de cumplir con su obligación, la realidad es que luego de transcurrir tanto tiempo la necesidad y urgencia de las pensiones atrasadas ha disminuido grandemente. En estas circunstancias, es menester evaluar el impacto que un desembolso inmediato de más de $10,000 pueda tener, en contraste con el tiempo transcurrido de más de seis años, y cómo ello afectaría la capacidad económica del padre. La finalidad perseguida por las pensiones alimenticias es el bienestar del alimentista y no penalizar al alimentante. En este caso, donde la reclamación está basada en unas deudas de más de cinco años, y donde se ha comprobado que durante los últimos años el padre alimentante ha cumplido con su obligación y no existe una necesidad inmediata del menor por la suma adeudada, procede que dejemos sin efecto la resolución recurrida para que el tribunal a quo

apruebe un plan de pago que le permita al peticionario satisfacer su deuda atrasada de acuerdo con su situación económica actual.

## V

■ Antes de concluir queremos reafirmar la preocupación que tiene este Tribunal con la litigación de las reclamaciones de alimentos de menores. *Valencia, Ex parte,* supra; *Martínez* v. *Rivera Hernández,* supra. Tanto los padres como los abogados y los jueces tienen la ineludible responsabilidad legal, moral y ética de velar por el bienestar de los menores al tramitar estas controversias. *Quiñones* v. *Jiménez Conde,* supra. En el ejercicio de esa responsabilidad, los abogados deben ilustrar a sus clientes acerca de los derechos y obligaciones que les acogen. Al padre custodio deben instruirle que tiene que realizar cualquier reclamación alimenticia con premura; que si necesita un aumento en las pensiones y el padre alimentante se niega a otorgarlo debe acudir inmediatamente a los tribunales. Al padre alimentante se le debe informar claramente cuál es su obligación, las consecuencias del incumplimiento, y su obligación de acudir al tribunal a solicitar una rebaja de la pensión si las circunstancias económicas han variado.

■ Al decretar el divorcio y en cualquier otra etapa de los procedimientos si así lo estima conveniente, el tribunal debe instruir a las partes sobre sus derechos y obligaciones. No debemos olvidar que gran parte de los litigios que se producen en esta área son el producto del desconocimiento y falta de información que sufren las partes. En su deber de *parens patriae* el tribunal deberá, en la medida de lo posible, subsanar este desconocimiento.

*Se expedirá el auto, se dejará sin efecto la resolución recurrida y se devolverá el caso al tribunal de instancia para que continúe con los procedimientos.*

El Juez Asociado Señor Rebollo López no intervino.