NELLIE GONZÁLEZ, demandante y recurrida, *v.* JOSÉ ENRIQUE SUÁREZ MILÁN, demandado y peticionario.

*Número:* CE-92-120          *Resuelto:* 30 de junio de 1992

*Roberto Cardona Ubiñas*, abogado del peticionario; *Pedro García Mejías*, abogado de la recurrida.

EL JUEZ ASOCIADO SEÑOR FUSTER BERLINGERI emitió la opinión del Tribunal.

El presente caso requiere que resolvamos por primera vez cúal es el alcance de los términos del Art. 109 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 385, que limitan la pensión alimenticia del ex cónyuge a una cuarta parte de los ingresos, rentas o sueldos del alimentante.

## I

El 19 de diciembre de 1990, el Tribunal Superior, Sala de Aguadilla, decretó el divorcio de las partes, imponiéndole al peticionario una pensión alimenticia a favor de su ex cónyuge de $800 mensuales. El 14 de enero de 1991 el peticionario solicitó que se rebajase la pensión aludida por no guardar proporción con sus ingresos. En la declaración jurada que acompañaba su solicitud de rebaja, el peticionario indicó que aunque su ingreso bruto mensual era de

$3,599.79, su ingreso neto era sólo de $2,527.16, y que tenía gastos fijos de $1,836.18, sobrándole sólo $690.98 para atender la pensión de su ex cónyuge. El 18 de julio de 1991 el tribunal de instancia denegó la solicitud de rebaja, por lo que el peticionario oportunamente presentó una moción de reconsideración alegando que la pensión fijada excedía el límite máximo establecido por el Art. 109 del Código Civil, *supra*. El tribunal de instancia denegó la reconsideración y el peticionario acudió a nos mediante un recurso de *certiorari* impugnando la pensión aludida por ser contraria a lo dispuesto en el referido Art. 109. Concedimos treinta (30) días a la parte recurrida para mostrar causa por la cual no debía reducirse su pensión alimenticia conforme a lo dispuesto por el citado artículo. Habiendo contestado el recurrido nuestro requerimiento, por las razones expuestas a continuación confirmamos la sentencia de instancia.

## II

Debemos comenzar reiterando que el Art. 109, *supra*, llegó a nuestro Código Civil procedente del Art. 160 del Código Civil del estado de Louisiana. 31 L.P.R.A. sec. 385n; *Milán Rodríguez v. Muñoz*, 110 D.P.R. 610 (1981); *Magee v. Alberro*, 126 D.P.R. 228 (1990). No conocemos precisamente los motivos legislativos que impulsaron su adopción original en Puerto Rico, pero es claro que su adopción respondió, en general, al mandato del Congreso en 1900 de que las instituciones jurídicas de Puerto Rico estuviesen en más estrecha armonía con el sistema legal americano. Hasta el 1ro de marzo de 1902 rigió en el país el Art. 73 del Código Civil de España, que le reconocía a la mujer derecho a alimentos en casos de divorcio, *sin imponer cuotas o límites fijos a los mismos*. Las disposiciones del referido Art. 73 del Código Civil español fueron suplantadas luego del cambio de soberanía, al entrar en vigor en la isla el Proyecto de Código Civil preparado por la Comisión de Re-

visión creada bajo el Acta Foraker para ajustar las leyes de Puerto Rico a las exigencias del nuevo régimen.

Como señala Vázquez Bote, parafraseando a Muñoz Morales, la llamada revisión de 1902 tuvo como resultado que el Código Civil de Puerto Rico sufriera la influencia del criterio norteamericano irrazonablemente. Se llevaron a cabo modificaciones que, "aunque venidas del Código [C]ivil de Lousiana, no parangonaban con el Código [C]ivil de Puerto Rico, rompiendo su unidad sistemática, siendo, de otro lado, innecesarias. Igualmente, se introdujeron, sin necesidad alguna, preceptos ajenos a la peculiar forma de ser puertorriqueña ...". E. Vázquez Bote, *Derecho Civil de Puerto Rico*, San Juan, Eds. Jurídicas, 1972, T. I, Vol. 1, pág. 135.

Una de las disposiciones que se injertó a nuestro Código Civil como parte de la aludida "revisión" de 1902 fue precisamente el citado Art. 109 que nos ocupa. En Louisiana, el artículo del cual éste fue tomado disponía que la pensión alimenticia del marido a la esposa no excedería de *una tercera parte* del ingreso del marido. LSA–C.C. Art. 160 (West's 1993). Inicialmente en Puerto Rico se adoptó el artículo con igual límite de cuantía que en Louisiana. Sin embargo, en 1948 se enmendó el artículo y se redujo el límite máximo a una cuarta parte del ingreso del marido, sin que conste explicación o justificación alguna para tal reducción, ni quien la exigió.

En Louisiana, al interpretarse el alcance del artículo en cuestión, ha prevalecido la interpretación de que el ingreso del alimentante aludido incluye todas sus entradas, rentas y sueldos sin imputársele deducciones por razón de gastos que éste tenga. Es decir, para determinar cuál es la pensión máxima que puede pagársele al ex cónyuge se calcula una tercera parte del ingreso *bruto* del alimentante. En Louisiana se ha tenido muy en mente que si se fuera a determinar dicha pensión de acuerdo con el ingreso *neto* del alimentante existiría el riesgo de que éste incurra in-

necesariamente en gastos excesivos para así reducir la cuantía de la pensión. Véanse: *Sampognaro v. Sampognaro*, 41 So. 2d 456 (1949); *Roberts v. Roberts*, 145 So.2d 669 (1962); *Drapekin v. Drapekin*, 185 So.2d 90 (1966); *Ballard v. Ballard*, 367 So.2d 1220 (1979); *Sonfield v. Deluca*, 385 So.2d 232 (1980).

### III

El Art. 109 de nuestro Código Civil, *supra*, establece una limitación al máximo que puede fijarse por concepto de alimentos, que debemos interpretar *de manera flexible*. Ya en *Milán Rodríguez v. Muñoz*, supra, tuvimos que extender sustancialmente el ámbito de protección de este artículo para incluir al ex cónyuge varón en el beneficio de pensión alimenticia, salvando así el craso carácter discriminatorio que tenía de su faz el citado Art. 109. Ahora debemos reconocer que la limitación de la pensión a una cuarta parte de los ingresos del alimentante no es enteramente cónsona con las características esenciales que tiene la institución de alimentos entre parientes en nuestro ordenamiento jurídico. Los alimentos en nuestro Derecho se rigen esencialmente por el principio de *proporcionalidad*. Se conceden, generalmente, no de acuerdo con cuotas fijas, sino proporcionados al caudal o a las medios del alimentante y a las necesidades del alimentista. Véanse: *Falcón v. Cruz*, 67 D.P.R. 530 (1947); *Montañez v. Rodríguez*, 69 D.P.R. 867 (1949); *García v. Acevedo*, 78 D.P.R. 611 (1955); *Brea v. Pardo*, 113 D.P.R. 217 (1982); *Guadalupe Viera v. Morell*, 115 D.P.R. 4 (1983); *Rodríguez Avilés v. Rodríguez Beruff*, 117 D.P.R. 616 (1986). La cuota fija contradice el principio de proporcionalidad en aquellos casos donde, disfrutando el alimentante de recursos más que suficientes, no tiene que atender las necesida-

des legítimas del alimentista empobrecido si estas exceden la cuota fija.

■ En segundo lugar, como señalamos en *Suria v. Fernández Negrón*, 101 D.P.R. 316 (1973), la institución de alimentos en nuestro ordenamiento jurídico tiene un carácter *dinámico*, ya que "se reclaman o se dispensan al ritmo de las circunstancias cambiantes de alimentante y alimentista". Este carácter dinámico puede ser socavado por la cuota fija en aquellos casos donde las circunstancias del alimentista cambian y se deterioran notablemente pero éste no puede pedir más alimentos del ex cónyuge aun cuando tenga los medios si las nuevas necesidades exceden la cuota fija.

■ Finalmente, hemos señalado reiteradamente que el asunto de alimentos entre parientes está investido del mayor interés público. Como bien señala Manresa, la obligación de dar alimentos surge del derecho fundamental de todo ser humano a existir y a desarrollar plenamente su personalidad. Por eso es un " 'deber altamente social, que no depende de la voluntad del que le tiene, sino que se impone ... como una de las condiciones necesarias de la vida progresiva de la humanidad' ". J.M. Manresa y Navarro, *Comentarios al Código Civil español*, 7ma ed. rev., Madrid, Ed. Reus, 1956, T. I, págs. 782–783. Para poder atender cabalmente este interés apremiante del Estado es menester evitar, en lo posible, la cortapisa que impone una mecánica literal, como es la de la cuota fija.

■ Por estas razones, al interpretar el Art. 109 de nuestro Código Civil, *supra*, debe hacerse con flexibilidad, sin ceñirse a conceptos rígidos que impidan o dificulten lograr equitativamente los propósitos importantes que conforman la institución de alimentos en nuestro ordenamiento jurídico.

## IV

■ En el caso ante nos, la pensión fijada excedía la cuarta parte del ingreso *neto* mensual alegado por el peticionario, pero era menor que la cuarta parte del ingreso *bruto* mensual declarado por éste. Con arreglo a los señalamientos anteriores, resolvemos que la pensión fijada por el tribunal de instancia no excedió los límites fijados por el Art. 109 del Código Civil de Puerto Rico, *supra,* ya que es menor que la cuarta parte del ingreso bruto del alimentante.[1]

*Se dictará sentencia confirmatoria.*

El Juez Asociado Señor Rebollo López concurrió con el resultado mediante opinión escrita. El Juez Asociado Señor Hernández Denton concurrió sin opinión escrita.

— O —

Opinión concurrente emitida por el Juez Asociado Señor Rebollo López.

Como hemos ya expresado en varias ocasiones, el *uso indebido* del vehículo procesal decisorio de la "opinión" puede hacerle un grave daño a la imagen y reputación del Tribunal. Nunca debemos perder de vista que las "opiniones" que emite el Tribunal tienen el propósito, y efecto, de

---

[1] El Art. 109 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 385, literalmente dispone que la pensión alimenticia no podrá exceder "de la cuarta parte de los ingresos, rentas o sueldos percibidos". Si a ello aplicamos lo dispuesto en el Art. 15 del Código Civil, 31 L.P.R.A. sec. 15, a los efectos de que "[l] as palabras de una ley deben ser generalmente entendidas en su más corriente y usual significación, sin atender demasiado al rigor de las reglas gramaticales, sino al uso general y popular de las voces", debemos concluir que no se refiere al ingreso neto del alimentante, sino a todos los ingresos que éste percibe sin hacerle deducción alguna. La acepción general de los vocablos usados en el Art. 109, *supra,* sobre todo de la manera general en que se usan en dicho artículo, no es igual a la del concepto de "ingreso neto" que es técnico o especializado.

establecer en nuestra jurisdicción nuevas normas de derecho, así como aclarar y despejar situaciones jurídicas complejas o confusas, y suplir "lagunas" en nuestro ordenamiento.

Cuando la "opinión" que se emite por el Tribunal en un caso en particular tiene la consecuencia de *confundir* no sólo a la judicatura sino que a los integrantes de la clase togada en general, no hay duda que el Tribunal no ha cumplido con su principal obligación: la de *pautar el derecho* en nuestra jurisdicción *en una forma clara y diáfana*. La "Opinión" hoy emitida por una mayoría de los integrantes del Tribunal en el presente caso *lamentablemente no cumple con ese objetivo*.

## I

Realmente desconocemos los motivos, o razones, que movieron a la mayoría a certificar la decisión emitida como una Opinión del Tribunal. No creemos que la norma jurisprudencial que la Opinión emitida *intenta* establecer —a los efectos de que el Art. 109 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 385, debe ser interpretado en forma "flexible"— ameritara la emisión de una "opinión del Tribunal". Por otro lado, somos del criterio que nadie podrá descifrar, *con certeza*, que ha querido realmente decir el Tribunal con el término "flexible".

Pensando en voz alta, en ayuda de la profesión, se nos ocurre pensar que el Tribunal se refiere a que las disposiciones del citado Art. 109 no son mandatorias y, por el contrario, meramente directivas, o, que los jueces de instancia podrán ejercer su "discreción" al respecto.

En resumen, el ansia desmedida por publicar "opiniones" ha llevado, *nuevamente,* al Tribunal a certificar una

ponencia como "Opinión" que no cualifica como tal. Es por ello que meramente concurrimos en el resultado.[1]

---

[1] Somos del criterio que, *en virtud a los hechos específicos del caso de epígrafe,* es correcta la resolución que emitiera el tribunal de instancia en el presente caso. El peticionario realmente no ha demostrado que dicha resolución sea errónea; la misma merece nuestra deferencia.