TEXTO COMPLETO DE LA SENTENCIA
En la causa del epígrafe, el apelante, Sr. José E. Hernández Viñas (Sr. Hernández Viñas), solicita que revisemos la Resolución emitida el 6 de diciembre de 2004 y archivada copia de su notificación el día 14 de mismo mes y año, ante el Tribunal de Primera Instancia, Sala Superior de Bayamón (TPI), en la que se aumentó a $4,421.21 la pensión mensual alimentaria impuesta al apelante, para beneficio de su hija Paola Gabriela Hernández García (la menor), además de pagar otros gastos. La Resolución, a su vez, impuso al apelante el pago de $3,000.00 en pago de honorarios de abogado.
Hechos
Los antecedentes que presenta el recurso del epígrafe fueron ya considerados en la causa KLCE-2004-01440 por este Panel Apelativo. En aras de la economía procesal reproducimos aquí, en lo pertinente, los hechos medulares que informa esta causa, conforme ya lo hicimos por voz del Juez Ponente, Honorable José Miranda De Hostos, en la Resolución del 9 de noviembre de 2004:

“El 8 de febrero de 2001, la peticionaria [Sra.]García Muñoz presentó demanda de divorcio ante el Tribunal de Primera Instancia, Sala Superior de Bayamón [TPI]. (Ap. I, págs. 1-5.) El 30 de marzo de 2001, se emitió la primera resolución sobre pensión alimentaria aprobando la recomendación de la examinadora de pensiones alimentarias que ordenaba al recurrido [Sr.]Hernández Viñas, proveer una pensión alimentaria de 
*484
$2,000.00 quincenales[.] Además, se impuso el pago de las cuotas de hipoteca de la residencia de la menor Pa[o]la Hernández García, el mantenimiento, la mensualidad y matrícula escolar, las tutorías de la menor, entre otros gastos, suma que alcanzaba $8,500.00 mensuales aproximadamente. (Aps. II, III; págs. 6-8.)

Luego de múltiples incidentes procesales, el 5 de abril de 2001, las partes llegaron a un acuerdo en cuanto a la pensión alimentaria mediante el cual el recurrido pagaría la suma de $3,500.00 mensuales, más el plan médico, por concepto de pensión alimentaria para beneficio de su hija menor. En adición, se acordó una pensión para la peticionaria [aquí apelada] de $1,000.00 mensuales por un término de treinta (30) meses. (Ap. IV, págs. 9-13.) En esa misma fecha se celebró la vista de divorcio y el tribunal dictó sentencia el 2 de mayo de 2002, aprobando las estipulaciones de las partes y declarando roto y disuelto el vínculo matrimonial. (Ap. V, págs. 14-15.)

El 11 de febrero de 2004, la peticionaria [Sra.] García Muñoz presentó un escrito titulado “Solicitud Urgente de Aumento de Pensión Alimentaria, Pensión de Ex-cónyuge y Solicitud de Hogar Seguro”. Alegó que la pensión alimentaria para la hija y la ex-esposa eran insuficientes para cubrir todos los gastos y necesidades de la menor a tono con el estilo de vida al que siempre estuvo acostumbrada y del cual disfrutaba el recurrido. También alegó que su consentimiento al acuerdo estuvo viciado al momento de estipular la pensión permanente. Por último, solicitó que se designara el hogar ganancial como hogar seguro para la familia compuesta por la madre y la hija. (Ap. VI, págs. 16-25.)

El recurrido [Sr.] Hernández Viñas presentó su oposición a dicha moción el 23 de marzo de 2004. En dicho escrito adujo que no procedía el aumento de pensión alimentaria por cuanto la peticionaria tenía recursos para procurarse un hogar. Asimismo, alegó el recurrido que era asalariado, vivía alquilado y no tenía el estilo de vida que se le imputaba. (Ap. VII, págs. 26-44.)

El 26 de abril de 2004, la peticionaria presentó una réplica a oposición reiterando que procedía un aumento de pensión alimentaria y que debía considerarse el estilo de vida del recurrido así como su capacidad para proveer dicha pensión. (Ap. VIII, págs. 45-53.) Esta solicitó la expedición de sendas órdenes dirigidas a diferentes instituciones bancarias, casas de corretaje, corporaciones, organizaciones sociales, hospederías, así como concesionarios de autos para que produjeran información dirigida a establecer el estilo de vida que alegadamente negaba el recurrido. (Ap. IX, págs. 54-58.) También se le cursó al recurrido un pliego de interrogatorio y producción de documentos. (Ap. X, pág. 59.)

El recurrido se opuso a la expedición de las órdenes solicitadas, negando el estilo de vida que le imputaba la peticionaria y negando que ese fuese el mismo estilo de vida del cual disfrutó su hija, previo al recibo del recurrido de un adelanto de herencia de más de 1.5 millones de dólares. (Ap. XII, págs. 62-68.) El 6 de julio de 2004, la peticionaria, [Sra.] García Muñoz, presentó un escrito solicitando que se expidieran las órdenes judiciales y que se contestara el descubrimiento de prueba cursado. (Ap. XIII, págs. 69-70.) El tribunal de instancia, el 28 de julio de 2004, expidió las órdenes solicitadas por la peticionaria. (Ap. XV, págs. 73-81.)

El 2 de septiembre de 2004, el recurrido presentó un escrito sobre “Aceptación de Capacidad Económica, Moción Solicitando Paralización de Descubrimiento de Prueba-Urgente”. Mediante dicho escrito aceptó tener la capacidad económica para proveer una pensión alimentaria razonable para su hija menor de edad y solicitó protección del tribunal de instancia para que se dejaran sin efecto las órdenes sobre descubrimiento de prueba emitidas. También pidió la paralización de descubrimiento de prueba cursado, aduciendo que, una vez se admite la capacidad económica para pagar una pensión alimentaria razonable, no está obligado a descubrir su capacidad económica. (Ap. XVI, págs. 82-83.)

Por su parte, la peticionaria [Sra.] García Muñoz, se opuso a la paralización del descubrimiento de prueba alegando que había múltiples controversias que requerían descubrimiento adicional, incluyendo la 
*485
razonabilidad de los gastos y necesidades de la menor. (Ap. XVII, págs. 84-87.)

Así las cosas, el tribunal de instancia emitió su dictamen el 6 de octubre de 2004, denegando el descubrimiento de prueba en cuanto a los alimentos de la hija, pues el padre alimentante había aceptado la capacidad económica. (Ap. XIX, págs. 98-100.)” (Ap. III, Escrito de Oposición, págs. 14-23.)

De la referida Orden, la apelada, Sra. García Muñoz, acudió en alzada ante este Foro, en la causa KLCE-2004-01440. Dicho recurso fue denegado mediante Resolución emitida el 9 de noviembre de 2004.
Luego de varios trámites procesales, no necesario aquí pormenorizar, el 24 de noviembre de 2004 se celebró la Vista de Pensión Alimentaria en beneficio de la menor, ante el Honorable Juez José E. Pérez Marrero, para dilucidar la sobcitud de aumento de pensión instada previamente por la apelada.
Mediante Resolución del 6 de diciembre de 2004, el hermano foro de instancia aumentó la pensión de la menor a $4,421.21 al mes pagadera por el Sr. Hernández Viñas directamente a la Sra. García Muñoz, y retroactiva al 11 de febrero de 2004. Además, dispuso que el apelante pagará: 1) el plan médico de la menor con beneficios de medicina y cuidado dental; 2) los gastos de matrícula, mensualidad, uniforme, zapatos, libros y materiales escolares; 3) el costo de las clases de canto, baile, modelaje, o clases especiales de la menor; 4) los gastos de ortodoncia de la menor; 5) los gastos de viajes educativos de la menor relacionados con el Colegio donde estudia; y 6) los campamentos y viajes en época de vacaciones escolares. Asimismo, impuso el pago de $3,000.00 por concepto de honorarios de abogado. (Ap. 34, Apelación, págs. 730-731.)
Mediante moción del 29 de diciembre de 2004, el Sr. Hernández Viñas solicitó oportunamente la reconsideración del dictamen. Argumentó que el ilustrado foro sentenciador no tomó en consideración la capacidad de la Sra. García Muñoz para generar ingresos y coparticipar en el sustento, al momento de establecer la pensión alimentaria de la menor, a pesar de la prueba que a tales efectos se practicó en la vista de alimentos. El 7 de enero de 2004, la apelada presentó un escrito en oposición a la moción de reconsideración del apelante. El 11 de enero de 2005 y notificado el 20 de mismo mes y año, el TPI declaró no ha lugar la solicitud en reconsideración.
No conforme, el apelante recurre vía la causa del epígrafe e imputa al foro de instancia la comisión de los siguientes señalamientos:

‘‘A. PRIMER ERROR:

Erró el Tribunal de Primera Instancia al fijar un aumento sustancial a la pensión alimentaria para beneficio de la menor sin considerar en forma alguna la capacidad económica de la madre y la obligación solidaria de ésta de proveer alimentos a su hija, imponiendo a Hernández el 100% de los gastos de dicha menor y gastos del hogar, así como al no considerar el número de personas que residen en el hogar sobre las cuales el Apelante no tiene obligación de alimentar y al incluir gastos de campamentos en los que la menor nunca ha incurrido y no están sostenidos por la prueba. Al así actuar, el Tribunal actuó con prejuicio y/o parcialidad, así como [que] se equivocó en la interpretación o aplicación del derecho sustantivo.

B. SEGUNDO ERROR:

Erró el Tribunal de Primera Instancia al permitir a [la Sra.] García Muñoz testificar sobre alegado estilo de vida de períodos previos al matrimonio, no permitiendo a[l Sr.] Hernández contrainterrogarla y/o presentar prueba sobre dichos períodos, actuación que constituye un abuso de discreción. ”

Sometida la apelación mediante la presentación de los alegatos de las partes y con el beneficio de la transcripción de la vista sobre fijación de pensión alimentaria, procedemos a disponer.
*486 Exposición y Análisis
I
En su primer señalamiento, el apelante sostiene, en síntesis, que incidió el hermano foro de instancia al aumentar considerablemente la pensión alimentaria a favor de la menor e imponerle el cien por ciento (100%) de dicha obligación, sin tomar en consideración la capacidad de generar ingresos y el capital con que cuenta la madre de la niña, aquí apelada. (Escrito de Apelación, pág. 17.) Adujo, además, que el TPI tampoco consideró el hecho de que en el hogar en que reside la menor, también residen cuatro personas, a saber, la menor, la Sra. García Muñoz, así como la abuela materna y el hermano de la Sra. García Muñoz. Id., a la pág. 18. Tres adultos con los cuales el apelante no tiene obligación alimentaria alguna. Ibid.
El deber de proveer alimentos se funda en principios umversalmente reconocidos de solidaridad humana dimanantes del derecho natural a la vida, e imperativo principalísimo de ios vínculos familiares. Chévere v. Levis, 150 DPR 525, 534 (2000); Martínez v. Rivera Hernández, 116 DPR 164, 168 (1985). Reiteradamente, se ha señalado que los casos relacionados con alimentos de menores están revestidos del más alío interés público, que no puede ser otro que el bienestar del menor. Maldonado v. Cruz Dávila, 161 DPR _ (2004), 2004 J.T.S. 8; Ríos Rosario v. Vidal Ramos, 134 DPR 3 (1993); González v. Suárez Milán, 131 DPR 296 (1992); In re: Negrón Rivera, 120 DPR 61, 71-72 (1987); Rodríguez Avilés v. Rodríguez Beruff, 117 DPR 616, 626-27 (1986).
Por ley natural, reproducida en los códigos y la jurisprudencia, la obligación del sustento recae en ambos padres. Arts. 143 y 153 Código Civil 1930, 31 LPRA §§ 562 y 601. Una vez roto el vínculo matrimonial, se reparte entre los progenitores la pensión alimentaria en proporción a sus respectivos caudales y capacidades. Art. 145 Código Civil, 31 LPRA § 564; Chévere v. Levis, supra, a la pág. 539; Figueroa Robledo v. Rivera Rosa, 149 DPR 565 (1999); López Martínez v. Yordán, 104 DPR 594, 597 (1976). Es decir, en aquellos casos en que haya más de un alimentante procede repartir entre ellos el pago de la pensión, en cantidad proporcional a su capacidad económica respectiva. Argüello v. Argüello, 155 DPR _ (2001), 2001 J.T.S. 127.
Como se sabe, la cuantía de pensión alimentaria se fijará tomando en consideración no sólo la necesidad de los hijos menores, sino también la condición socio-económica de los padres alimentantes. Así, pues, el deber de alimentar, educar y criar a la prole es parte del conjunto moral y jurídico que nace al momento de la concepción, irrespectivamente de las circunstancias del nacimiento y ha de ajustarse a cada caso particular. Soto Cabral v. E.L. A., 138 DPR 298 (1995).
Se entiende por alimentos todo lo que es indispensable para el sustento, habitación, vestido y asistencia médica, según la necesidad del alimentista dentro de la posición social de la familia. Los alimentos incluyen la educación o instrucción. Artículo 142 del Código Civil, 31 LPRA § 561. Ahora bien, cuando desafortunadamente los padres no se ponen de acuerdo y es necesario acudir al foro judicial para ello, la obligación de alimentar no puede transformarse en casus belli para mutuo oprobio entre progenitores.
Cuando recae, entonces, en el tribunal la función de decidir, el foro ha de actuar siempre dentro del concepto prudente y jurídico del buen padre de familia, adaptando el remedio a las necesidades del alimentista dentro de su ámbito socio-económico sin exorbitancias, aunque la prueba pueda indicar que dentro del contexto familiar anterior se incurriere en tales excesos. Es decir, la neurálgica función de adjudicación económica del foro judicial en estos casos, no siempre ha de ser la de calcar una previa relación económica paterno o matemo-filial, pues en cuanto se trate de excesos, el tribunal está impedido de adoptarlos, o de lo contrario violaría el ya mencionado parámetro rector de propiedad y prudencia, que siempre le obliga.
En López v. Rodríguez, 121 DPR 23, 33 (1988), el Tribunal Supremo resolvió que los tribunales de primera instancia, al determinar la capacidad económica de un alimentante para proveer alimentos, no están limitados a considerar únicamente evidencia testifical y documental sobre sus ingresos, habida cuenta de que pueden *487 considerar aspectos tales como el estilo de vida que lleva el alimentante, su capacidad para generar ingresos, la naturaleza y cantidad de propiedades con que cuenta, la naturaleza de su empleo o profesión y sus otras fuentes de ingreso. Los tribunales pueden, a tenor con la prueba circunstancial que se le someta, inferir que el alimentante tiene medios suficientes para cumplir con la obligación alimenticia que se le imponga. López v. Rodríguez, supra.
Las determinaciones fijando pensiones alimentarias, de ordinario, nunca llegan a ser cosa juzgada. Piñero Crespo v. Gordillo Gil, 122 DPR 246, 258 (1988). Es norma que “los decretos fijando o modificando pensiones [alimentarias] previamente vigentes, siempre, por su propia naturaleza, son de carácter temporero, provisional o interlocutorio. Se modificarán según varíen las circunstancias en que se formula la ecuación de necesidad y capacidad. No adquieren finalidad”. Rodríguez Amadeo v. Santiago Torres, 133 DPR 785 (1993).
Finalmente, consignamos que el tribunal goza de amplia discreción para determinar la cuantía adecuada y la distribución de la pensión alimentaria, siempre, claro está, tomando en consideración los mejores intereses, el bienestar y conveniencia de los menores o alimentistas. In re: Negrón Rivera, supra. La determinación de la cuantía de los alimentos, de ordinario, corresponde al prudente arbitrio de los tribunales, teniendo en cuenta, como queda ya dicho, que exista proporción entre el estado de necesidad del alimentista y la posibilidad económica del alimentante. Art. 146 del Código Civil, 31 LPRA § 565.
De los hechos que esta causa informa se desprende que el apelante, Sr. Hernández Viñas, admitió contar con la capacidad económica para sufragar una pensión alimentaria razonable en favor de su hija menor. (Ap. 16, Apelación, págs. 145-146.) Posteriormente, el TPI celebró una Vista de Alimentos donde recibió el testimonio de la apelada, así como prueba documental, consistente en la Planilla de Información Personal y Económica (PIPE) de la apelada. (Ap. 28, Apelación, págs. 193-704.)
Durante el contrainterrogatorio practicado a la apelada, Sra. García Muñoz, la representación legal del Sr. Hernández Viñas confrontó a la testigo con información y documentos que reflejaban ingresos recibidos o por recibir por la apelada, provenientes de participaciones en herencias, donaciones, transacciones de pleitos, compensación por empleo, entre otros extremos. Ante ello, la apelada aduce en su alegato que en la vista se estipuló que ella es estudiante universitaria y que recibe asistencia económica.
Por otro lado, la Sra. García Muñoz se cuestiona “¿[p]or qué el padre [apelante], habiendo estipulado que la madre no trabaja y es estudiante universitaria, pretende ahora que se le impute a la madre capacidad para generar ingresos?” (Alegato de Oposición, pág. 17.) Argumentó, además, “que el TPI tuvo ante sí toda la información necesaria para concluir de la forma en que lo hizo. Sabía de las herencias dejadas a la demandante [apelada] y de la composición familiar, por lo que lo consideró al fijar la pensión.” Ibid. Finalmente, al emitir la Resolución nada dispuso el TPI en cuanto a la obligación alimentaria de la apelada para con su hija menor.
En cuanto a la aceptación de capacidad económica realizada por el Sr. Hernández Viñas, el Juez que presidió la Vista se expresó en los siguientes términos y citamos:

“JUEZ:

[...] aquí estamos hablando sobre los alimentos de Paola, ¿okay?, las necesidades de ella, se aceptó capacidad, ¿okay? Y, [si] se aceptó capacidad es que me quiere decir que él [Sr. Hernández Viñas]puede pagar todos los gastos en que estaba incurriendo Paola y mantenerla en el mismo estilo de vida, ¿okay?...

LCD A. VILANOVA HERNÁNDEZ:

Los gastos razonables...

*488
JUEZ:

No, los gastos en que estaban, que no sean razonables, porque aquí estamos aceptando capacidad y es donde ella estaba porque yo puedo entender una cosa que es razonable, ...y para mí razonable es una cosa diferente a lo que sea para él, lo que es para mí lujo quizás para él sea otra cosa, ¿ve? Y, aquí, lo vamos a establecer es como estaba Paola, en qué condiciones estaba, que él puede pagar eso y lo que me tienen que traer aquí es cuáles son los gastos de ella y cuáles son las necesidades, tanto, se suman gastos, necesidades, eso es lo que tiene que pagar. Si no me traen cuáles son los gastos y necesidades, pues, lo que yo tenga, esos son los que tomo en consideración; pero de que ella [apelada] tiene ingresos o no tiene ingresos, no estamos bregando para utilizar las tablas aquí,... ni para establecer una supletoria, ni nada de eso, ¿okay?

LCDA. VILANOVA HERNÁNDEZ:

Lo que sucede, Su Señoría, es que obviamente para propósitos de la fijación de la pensión alimentaria, siendo ... una obligación solidaria de mamá y papá...

JUEZ:

No, no, él aceptó, él aceptó capacidad, ...al él aceptar es de él, exclusivamente [la obligación alimentaria].

LCDA. VILANOVA HERNÁNDEZ:

...aunque él haya aceptado capacidad, el proceso es para determinar cuál parte de la obligación corresponde a papá y cuál parte corresponde a mamá.

JUEZ:

No, por eso entonces, si hubiera sido así, es que tiene que haber un descubrimiento de prueba y eso, ...por eso es que se elimina todo el descubrimiento de prueba y todo, licenciada.

[...]

LCDA. VILANOVA HERNÁNDEZ:

...en el caso de Chévere versus Levis se le fijó capacidad económica a mamá y se tomó en consideración la capacidad económica de mamá, también al fijar al pensión por el Examinador.

JUEZ:

Aquí ya yo les dije cuál yo voy a tomar en consideración, está anotada en récord, y esa es la determinación que... (ININTELIGIBLE). (Transe. laspágs. 70-73.) (Énfasis nuestro.)”

A la luz de lo anterior, preciso es señalar que conforme a la doctrina que gobierna este asunto, cuando un padre o madre alimentante acepta tener capacidad económica, lo que admite es que cuenta con los recursos suficientes para sufragar aquella pensión alimentaria razonable que en su día fije el Tribunal. Bajo ningún concepto, dicha aceptación de capacidad económica sugiere, implica o se entiende como que exime al otro padre o madre alimentante de su responsabilidad alimentaria para con sus hijos, en la proporción que le corresponda. Así claramente lo expresó nuestro más alto foro judicial al disponer que:
“Cuando la capacidad económica del alimentante no está en controversia, como en el caso de autos, no *489 procede descubrimiento de prueba alguno respecto a su estilo de vida.6 En el caso de autos, el señor González ha aceptado reiteradamente tener capacidad económica; por lo tanto, sólo restaría determinar las necesidades del menor y la capacidad económica de la madre para fijar la cuantía que viene obligado a pagar por concepto de alimentos. Ferrer v. González, 162 DPR _ (2004), 2004 J.T.S 121. ” (Nota al calce 6, suprimida, énfasis en original, subrayado nuestro).
La importante normativa establecida en Chévere v. Levis I y II, supra, y reiterada en Ferrer v. González, supra, de tanto beneficio a la economía procesal, no puede resultar tan efímera que desvanece ante el reclamo de corresponsabilidad económica de padre y madre ante la prole. No es razonable concluir que al aceptar la capacidad económica para pagar pensión alimentaria, lo que “...fomenta la política del estado de “paternidad voluntaria”... Ferrer v. González, supra, ipso jure..., se renuncia a reclamar al co-progenitor para que también aporte a los alimentos acorde a sus posibilidades económicas(Énfasis suplido.)
Por tanto, en el caso de autos, habida cuenta que el apelante reconoce tener capacidad económica, corresponde entonces al hermano foro de instancia considerar la capacidad económica de la apelada. Ahora bien, es menester aclarar que en ese proceso, la economía procesal lograda en la jurisprudencia arriba citada, entiéndase la supresión del descubrimiento de prueba en cuanto al alimentante que admitió capacidad económica, no puede circunvalarse y echarse a un lado por razón de que necesariamente tenemos que acudir a una operación aritmética “sobre datos de ingresos personales”, para poder distribuir entre los progenitores la carga alimentaria, cuando tal proceder nos arrastrará de nuevo a un descubrimiento de prueba antes superado.
Para dirimir la obligación alimentaria entre padre y madre, el TPI puede y debe acudir a otros medios evidenciarlos. En Ferrer v. González, supra, a las páginas 9-10 al respecto se dijo:
Por otra parte, en Chévere v. Levis II, Op. de 3 de noviembre de 2000, 2000 JTS 175, [152 DPR 492, 499 (2000)], secuela del caso Chévere v. Levis I, supra, nos tocó determinar cuáles criterios debe considerar un tribunal para imponer una pensión alimentaria, cuando el llamado a alimentar acepta capacidad para pagar la cantidad que se le imponga y, por lo tanto, no tiene la obligación de descubrir sus fuentes de ingresos para que se pueda determinar su capacidad económica.

En cuanto a las reglas que gobiernan el derecho probatorio en este tipo de caso, establecimos lo siguiente:

“La Regla 10(H) de Evidencia, 32 LPRA Ap. LV, dispone que cualquier hecho en controversia es susceptible de ser demostrado mediante evidencia indirecta o circunstancial. La evidencia circunstancial es intrínsicamente igual a la evidencia directa. La norma de derecho con respecto a la evidencia circunstancial es que procede que se dé por probado un hecho a base de una inferencia, cuando hay una relación racional entre ésta y el hecho básico probado. (Citas omitidas.)

A la luz de lo anterior, resolvimos que un tribunal no está limitado a considerar únicamente evidencia sobre gastos e ingresos, ya fuere testifical o documental. Puede utilizar, además, evidencia circunstancial que le permita inferir, como parte de las necesidades del menor, el estilo de vida a que éste tiene derecho a tenor con la capacidad económica y estilo de vida de su padre o madre.” (Nota al calce suprimida, énfasis nuestro.)
Conforme a lo intimado, entendemos que en aquellos casos en que el padre o madre alimentante acepta la capacidad económica, no releva al otro padre de su obligación de aportar a los gastos del menor, conforme a sus ingresos. Por tanto, se cometió el error apuntado.
II
En su segundo señalamiento, el apelante sostiene que el TPI abusó crasamente de su discreción para dirigir los procedimientos, al primeramente permitir que la apelada testificara sobre alegado estilo de vida de períodos *490 previos del matrimonio y posteriormente no acceder a que el apelante la contrainterrogara o presentara prueba sobre dichos períodos.
Sabido es que en nuestro medio el concepto discreción “necesariamente ha de nutrirse de un juicio racional apoyado en la razonabilidad y fundamentado en un sentido llano de justicia; no es función al antojo o voluntad de uno, sin tasa o limitación alguna...”. Santa Aponte v. Srio. del Senado, 105 DPR 750, 770 (1977). La discreción es “una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera.” Banco Popular de P.P. v. Mun. de Aguadilla, 144 DPR 651, (1997); Pueblo v. Ortega Santiago, 125 DPR 203, 211 (1990).
De ordinario, los tribunales apelativos no intervendrán con el manejo de los casos atendidos por el hermano foro de instancia, “salvo que se demuestre que hubo un craso abuso de discreción o que el tribunal actuó con prejuicio y parcialidad, o que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, y que nuestra intervención en esa etapa evitará un perjuicio sustancial.” Zorniak Air Services v. Cessna Aircraft Co., 132 DPR 170, 181 (1992); Lluch v. España Service Sta., 117 DPR 729 (1986).
De una mera lectura de la transcripción de la vista que obra en autos, se colige que el Juez que presidió la misma fue enfático al señalar en varias ocasiones a las partes que sólo estaría considerando prueba referente al estilo de vida al cual tenían acostumbrada a la menor durante la última instancia del matrimonio. Del récord se desprende que el Juez limitó la presentación de prueba a lo acaecido a partir del año 2000. (Véase, Transe., a las págs. 56-59; 67; 72-74; 76; 105-106.)
Nada hay en este recurso que tienda a establecer craso abuso en la conducción de los procedimientos ante TPI. El apelante no presenta ante nos datos contundentes que nos mueva a considerar que el foro sentenciador se extralimitó en la discreción que le ha sido conferida para manejar el trámite procesal de la causa de marras. Por tanto, somos de la opinión que el segundo error señalado no se cometió.
Dictamen
Conforme a lo expuesto, revocamos la Resolución del 6 de diciembre de 2004, aquí apelada, para ordenar al Tribunal de Primera Instancia, Sala Superior de Bayamón, celebre vista evidenciaría a los efectos de considerar la capacidad económica de la apelada para también aportar en alguna cantidad monetaria al sostén de su hija menor, a tenor con lo aquí dispuesto. En el ínterin y sujeto a posterior ajuste entre progenitores, mantenemos vigente la pensión actualmente impuesta al padre.
Así modificada, se confirma.
Lo acordó y manda el Tribunal y lo certifica la Secretaria.
Laura M. Vélez Vélez
Secretaria del Tribunal de Apelaciones