ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| **ZAYDA LUZ ABADÍA ARROYO**<br><br>Recurrida<br><br>v.<br><br>**RUBÉN ANTONIO SOTO GINÉS**<br><br>Peticionario | KLCE202301267 | **CERTIORARI** procedente del Tribunal de Primera Instancia, Sala Superior de **Bayamón**<br><br>Civil Núm.:<br>**BY2022RF01424**<br><br>Sobre:<br>Alimentos |

Panel integrado por su presidenta la Jueza Romero García, la Jueza Martínez Cordero y la Jueza Boria Vizcarrondo[1].

Boria Vizcarrondo, Jueza Ponente.

**SENTENCIA**

En San Juan, Puerto Rico, a 22 de enero de 2024.

-I-

Comparece ante nos el señor Rubén Antonio Soto Ginés (señor Soto Ginés o el recurrente) y nos solicita revocar una *Resolución* emitida el 11 de octubre de 2023, por el Tribunal de Primera Instancia, Sala Superior de Bayamón (TPI).[2] En virtud del referido dictamen, el TPI determinó no acoger el planteamiento del señor Soto Ginés de reducir la pensión de alimentos del menor procreado con la señora Zayda Luz Abadía Arroyo (señora Abadía Arroyo o la recurrente).

Por los fundamentos que esbozamos a continuación, *expedimos* el auto de *certiorari* y confirmamos la determinación del TPI. Veamos los hechos procesales y las normas jurídicas atinentes a este recurso.

---

[1] Mediante la Orden Administrativa OATA-2023-212 de 6 de diciembre de 2023, se designó a la Hon. Lersy G. Boria Vizcarrondo como integrante de este Panel Especial en sustitución del Hon. Juan R. Hernández Sánchez.
[2] Apéndice de *Certiorari*, Anejo 1, págs. 1-6. Archivada y notificada en autos el 12 de octubre de 2023.

-II-

La controversia ante nuestra consideración dimanó el 9 de agosto de 2022, fecha en que la señora Abadía Arroyo instó una *Demanda* por alimentos en contra del señor Soto Ginés.[3] En esta, la aquí recurrida arguyó que las partes contrajeron matrimonio el 25 de agosto de 2001. Adujo que, durante la vigencia del matrimonio, las partes procrearon un hijo que, al momento de presentar la *Demanda*, tenía diecinueve (19) años de edad. No obstante, la unión matrimonial se disolvió mediante divorcio por consentimiento mutuo en sede notarial mediante la Escritura Núm. 7, otorgada el 21 de septiembre de 2018 en San Juan, Puerto Rico, ante la notaria Janice Vanessa Ortiz Valentín.[4] Alegó que, por virtud del referido instrumento público, las partes estipularon que el recurrente proveería la pensión alimentaria al menor, por la cantidad de mil doscientos dólares mensuales ($1,200.00), dividido en seiscientos dólares ($600.00) quincenales. No obstante, esgrimió que, unilateralmente, el señor Soto Ginés disminuyó la cantidad total de la pensión alimentaria del menor, adeudando las siguientes cantidades:

| Septiembre de 2021 | $553.09 |
| Octubre de 2021 | $350.00 |
| Noviembre de 2021 | $965.00 |
| Diciembre de 2021 | $757.74 |
| Enero de 2022 | $493.83 |
| Febrero de 2022 | $797.33 |
| Marzo de 2022 | $761.28 |
| Abril de 2022 | $695.80 |
| Junio de 2022 | $209.75 |
| Julio de 2022 | $787.85 |

Por cuanto, la señora Abadía Arroyo solicitó que se encontrase incurso en desacato al señor Soto Ginés, entre otros remedios que dispusiera el TPI.

La recurrida acompañó la *Demanda* con una *Estipulación y acuerdos sobre divorcio por consentimiento mutuo*, incorporada a la

---

[3] *Íd.*, Anejo 3, págs. 29-52.
[4] *Íd.*, Anejo 2, págs. 7-28.

Escritura Núm. 7 sobre divorcio por consentimiento mutuo.[5] En el alusivo documento se estipuló lo siguiente:

> 14. El padre, Soto Ginés, acuerda pagar una pensión alimentaria en beneficio de su hijo de $600.00 a ser pagados de manera quincenal (para un total de $1,200.00 mensuales), directamente a la madre custodia, Abadía Arroyo. Soto Ginés tendrá cinco [5] días de gracia para entregar o depositar la pensión alimentaria antes mencionada. Esta pensión alimentaria contempla el pago de los gastos de educación, vivienda y médicos del menor. [...] **Se le advierte a Soto Ginés de la necesidad de solicitar al Tribunal el dejar sin efecto la pensión alimentaria.** Sin embargo, el menor podrá dialogar con los Comparecientes para establecer alguna pensión alimentaria de ser necesario.
>
> 15. No obstante lo anterior, en cuanto a los gastos relacionados al regreso de escuela, tales como uniforme, libros, materiales y matrícula, los cuales se incurren una vez al año, los Comparecientes establecen que los mismos serán sufragados en partes iguales entre ellos. De igual manera, en relación a los gastos de graduación de Escuela Superior del menor; los costos de examen necesarios para la administración de la universidad, gastos de solicitudes a las universidades; gastos de entrevistas a las universidades y la **correspondiente relocalización, en la eventualidad que sea una universidad fuera de Puerto Rico o fuera del área metropolitana de Puerto Rico [...] serán sufragados por los comparecientes en partes iguales.**
>
> .        .           .        .        .        .        .        .        .
>
> 18. Soto Ginés se compromete a ceder los derechos de estudios universitarios que tiene como veterano militar a su hijo [...] Los beneficios económicos que reciba el menor como parte de esta cesión serán considerados como una aportación económica del padre, en cualquier cómputo que se realice de pensión alimentaria a favor del menor.
>
> .        .           .        .        .        .        .        .        .
>
> 22. Cualquier viaje de placer que realicen los comparecientes con el menor serán pagados por el compareciente que realice el viaje. **Sin embargo, cualquier viaje relacionado a los estudios o educación del menor será costeado por los Comparecientes en partes iguales.** Sobre lo anterior, los Comparecientes determinaran la autorización y participación del menor en dichos viajes.[6] (Énfasis nuestro).

Posteriormente, el 6 de octubre de 2022, el recurrente presentó una *Contestación a petición de alimentos*.[7] Adujo que la pensión

---

[5] *Íd.*, Anejo 3, págs. 41-49.
[6] *Íd.*, págs. 42-44.
[7] *Íd.*, Anejo 5, págs. 57-61.

estipulada de mil doscientos dólares ($1,200.00) mensuales estaba condicionada hasta que el menor culminara la escuela superior. Esto, debido a que los beneficios bajo el Programa Post 9/11 GI Bill que el señor Soto Ginés cedió a su hijo, se computaría como parte de la pensión alimentaria que le otorgaría al menor. Por ello, sostuvo que tan pronto el menor ingresó a una universidad en Estados Unidos, el dinero recibido como parte del Programa Post 9/11 GI Bill para el pago de matrícula, materiales y hospedaje, representó un exceso en el pago de la obligación alimentaria y se le debía acreditar como aportación económica a la pensión alimentaria. A su vez, manifestó que el TPI carecía de jurisdicción para imponer un desacato en su contra, debido a que la pensión alimentaria no fue fijada mediante un procedimiento judicial ni por la Administración para el Sustento de Menores (ASUME).

En respuesta a un requerimiento de información cursado por el señor Soto Ginés, la señora Abadía Arroyo expresó que, para el primer año universitario del menor, desembolsó diez mil novecientos dos dólares ($10,902.00) en gastos universitarios y que, en el primer semestre del segundo año universitario, pagó seis mil trescientos noventa y cuatro dólares con ochenta y ocho centavos ($6,394.88).[8]

El 7 de agosto de 2023, el TPI celebró una vista de desacato, en la cual determinó que las partes sometieran sus planteamientos por escrito para tomar una determinación. En cumplimiento con lo anterior, el 28 de agosto de 2023, el señor Soto Ginés presentó una moción en la que reiteró que en la estipulación del divorcio se condicionó la modificación de la pensión alimentaria del menor, a partir de su ingreso a la universidad, debido a que el recurrente renunció al beneficio otorgado por la Administración de Veteranos para el pago del setenta por ciento (70%) de sus estudios universitarios

---

[8] *Íd.*, Anejo 26, pág. 117.

con el objetivo de cederlo a su hijo y deducirlo de su obligación alimentaria.[9] Además, apuntó que el ordenamiento jurídico no provee un remedio para ejecutar los acuerdos alcanzados en un trámite de divorcio por sede notarial, por lo que el remedio adecuado era una acción de ejecución ordinaria de una estipulación.

En igual fecha, la señora Abadía Arroyo señaló que su reclamación de desacato versó en la falta de pago de los alimentos, ascendente a dieciséis mil novecientos cincuenta y cuatro dólares con ocho centavos ($16,954.08), conforme se dispuso en la cláusula catorce (14) de la estipulación.[10] Indicó que la intención de las partes en la cláusula relacionada con el beneficio provisto por la Administración de Veteranos para los estudios universitarios del menor era que se computara como parte de la aportación económica del padre ante la eventualidad de una revisión de la pensión alimentaria. Por otro lado, indicó que la cláusula en controversia era inválida, dado que se pactaron alimentos en futuro, sin considerar los gastos sustanciales que implican los estudios universitarios del menor en los Estados Unidos.

Así las cosas, el 11 de octubre de 2023, el TPI emitió una *Resolución.*[11] Mediante esta, el Foro Primario dictaminó no acoger el planteamiento del señor Soto Ginés de reducir el beneficio de la Administración de Veteranos a su obligación alimentaria, debido a que dicho beneficio no considera otros gastos como el hospedaje, los alimentos, los libros, la ropa y el entretenimiento del menor. Estableció que las partes debían considerar revisar la pensión alimentaria dado que los gastos resultaban mayores, conforme el pasar del tiempo y la inflación, por lo que la estipulación no debía estimarse con carácter final. Asimismo, decidió que el recurrente debía pagar la cantidad

---

[9] *Íd.*, Anejo 33, págs. 127-134.
[10] *Íd.*, Anejo 34, págs. 135-138.
[11] *Íd.*, Anejo 1, págs. 1-6. Archivada y notificada en autos el 12 de octubre de 2023.

adeudada hasta tanto se revisara la pensión alimentaria. Solventó que las partes debían reunirse para examinar la cantidad adeudada. En torno al desacato, el TPI se pronunció No Ha Lugar.

No conforme con la determinación del TPI, el señor Soto Ginés acudió ante esta Curia por virtud del presente recurso de *certiorari* y le imputó al TPI la comisión del siguiente error:

> ERR[Ó] EL TPI AL ACOGER EN UNA DEMANDA DE "ALIMENTOS" INSTADA POR LA PARTE DEMANDANTE RECURRIDA, QUE NO TEN[Í]A RECLAMO DE ALIMENTOS ALGUNO, POR EL CONTRARIO[,] LA ACCI[Ó]N DE AUTOS INSTADA POR LA DEMANDANTE CONSTITUYE UN RECLAMO DE DESACATO SOBRE UNA PENSI[Ó]N QUE NO FUE FIJADA POR EL TRIBUNAL NI POR LA ASUME, SIN HABER DADO VALIDEZ AL DECRETO DE DIVORCIO EN SEDE NOTARIAL Y SIN PERMITIR QUE EL DEMANDADO PETICIONARIO PRESENTE SU PRUEBA PARA DEMOSTRAR LA IMPROCEDENCIA DE LOS RECLAMOS DE LA SRA. ABAD[Í]A.

En esencia, el recurrente planteó que erró el TPI al establecer que el beneficio del setenta por ciento (70%) del costo de los estudios universitarios del menor no comprendía otros gastos como el hospedaje, los alimentos, los libros, entre otros. Por ello, indicó que el TPI debía celebrar una vista evidenciaria en la que las partes probaran sus reclamos de existencia de una deuda por concepto de alimentos. Nos solicitó que se revocásemos la *Resolución* recurrida y que ordenásemos al TPI celebrar una vista evidenciaria para aquilatar la prueba de los pagos efectuados por el señor Soto Ginés.

Por su parte, el 29 de noviembre de 2023, la recurrida presentó su oposición a la petición del auto de *certiorari*. Argumentó que la determinación del TPI no Había sido contraria a derecho, no constituía un abuso de discreción, no había mediado prejuicio, parcialidad o error craso en la apreciación de la prueba, ni la expedición del recurso evitaría un fracaso a la justicia.

En vista del señalamiento de error, expondremos la normativa jurídica concerniente a este recurso.

-III-

-A-

El auto de *certiorari* es un vehículo procesal extraordinario y discrecional que permite que un tribunal de mayor jerarquía revise determinaciones de un tribunal inferior. *Rivera et al. v. Arcos Dorados et al.*, 2023 TSPR 65, 212 DPR __ (2023); *McNeil Healthcare, LLC v. Mun. Las Piedras*, 206 DPR 391, 403 (2021); *IG Builders et al. v. BBVAPR*, 185 DPR 307, 337-338 (2012). La característica principal de este recurso es la discrecional que nos asiste para autorizar la expedición y adjudicar la controversia en sus méritos. *IG Builders et al. v. BBVAPR*, *supra*, pág. 338; *Rivera Figueroa v. Joe´s European Shop*, 183 DPR 580, 596 (2011). El máximo foro judicial definió que la discrecionalidad es "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera". *Citibank et al. v. ACBI et al.*, 200 DPR 724, 735 (2018); *Pueblo v. Sánchez González*, 90 DPR 197, 200 (1964). Empero, nuestra discreción no es absoluta dado que no podemos abstraernos del Derecho, debido a que constituiría abuso de discreción. *Negrón v. Srio. de Justicia*, 154 DPR 79, 91 (2001).

Por otro lado, nuestra discrecionalidad no opera en el abstracto ni está ausente de otros parámetros. *Rivera et al. v. Arcos Dorados et al.*, *supra*; *800 Ponce de León v. AIG*, 205 DPR 163, 176 (2020); *IG Builders et al. v. BBVAPR*, *supra*, pág. 338; *Rivera Figueroa v. Joe´s European Shop, supra.* Pues, con el objetivo de que podamos ejercer sabiamente nuestra facultad discrecional, la Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 40, establece los criterios que debemos considerar al atender la solicitud de expedición del auto de *certiorari*. En particular, dispone lo siguiente:

> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

(B) Si la situación de hechos planteada es la más indicada para el análisis del problema.

(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia. *Íd.*

Por otro lado, la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, regula las instancias en las que podemos revisar determinaciones interlocutorias del Tribunal de Primera Instancia. *Rivera et al. v. Arcos Dorados et al., supra*; *McNeil Healthcare, LLC v. Mun. Las Piedras, supra*, pág. 404; *IG Builders et al. v. BBVAPR, supra*, págs. 336-338. A saber:

> Todo procedimiento de apelación, *certiorari*, certificación, y cualquier otro procedimiento para revisar sentencias y resoluciones se tramitará de acuerdo con la Ley aplicable, estas reglas y las reglas que adopte el Tribunal Supremo de Puerto Rico. El recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de certiorari en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión. Regla 52.1 de Procedimiento Civil, *supra*, R. 52.1.

De no estar presentes los criterios antes esbozados, corresponde abstenernos de expedir el auto de *certiorari*, de forma que se continúe con los procedimientos en el tribunal de primera instancia.

-B-

El Tribunal Supremo de Puerto Rico estableció que "[p]rocurar el bienestar de los menores constituye un pilar fundamental de nuestra sociedad y se ha reconocido como parte integral de la política pública del Gobierno de Puerto Rico". *De León Ramos v. Navarro Acevedo*, 195 DPR 157, 169 (2016). En este sentido, los menores de edad tienen un derecho fundamental a recibir alimentos como corolario del derecho a la vida, consagrado en la Carta de Derechos de la Constitución de Puerto Rico *Íd.*; *Díaz Rodríguez v. García Neris*, 208 DPR 706, 717 (2022). De este modo, los casos relacionados a alimentos están revestidos del más alto interés público. *Íd.*; *Rodríguez Rivera v. De León Otaño*, 191 DPR 700, 711 (2014); *Argüello v. Argüello*, 155 DPR 62, 70 (2001). Cuando están relacionados a los menores de edad, los progenitores son quienes tienen la responsabilidad de satisfacer los alimentos de sus hijos. *Pesquera Fuentes v. Colón Molina, 202* DPR 93, 103 (2019). Esto "tiene su génesis en el derecho natural, en los lazos indisolubles de solidaridad humana y de profunda responsabilidad de la persona por los hijos que trae al mundo, que son valores de la más alta jerarquía ético-moral y que constituyen una piedra angular de toda sociedad civilizada". *Argüello v. Argüello, supra,* pág. 69.

Cabe resaltar que "**[e]l derecho a recibir alimentos es personalísimo, imprescriptible, continuo e indivisible**. **No puede ser objeto de transacción, renuncia, gravamen o embargo**". Art. 651 del Código Civil de 2020, 31 LPRA sec. 7535. (Énfasis nuestro). Además, el Art. 653 del Código Civil de Puerto Rico dispone que el término alimentos comprende "todo lo que es indispensable para el sustento, la vivienda, la vestimenta, la recreación y la asistencia médica de una persona, según la posición social de su familia". *Íd.* sec. 7531. Además, "[c]uando el alimentista es menor de edad, los alimentos comprenden también su educación, las atenciones de previsión acomodadas a los usos y a las circunstancias de su entorno

familiar y social y los gastos extraordinarios para la atención de sus condiciones personales especiales". *Íd.* En torno a los gastos de estudios comprendidos en los alimentos, nuestro ordenamiento jurídico dispone que "[s]i el alimentista alcanza la mayoridad mientras cursa ininterrumpidamente estudios profesionales o vocacionales, la obligación de alimentarlo se extiende hasta que obtenga el grado o título académico o técnico correspondiente o hasta que alcance los veinticinco (25) años de edad, lo que ocurra primero, a discreción del juzgador y dependiendo las circunstancias particulares del caso". *Íd.* sec. 7533. Es norma trillada que cuando un menor de edad inició sus estudios profesionales o vocacionales, "**tiene derecho a exigir que el alimentante le provea los medios para terminarlo[s], aun después de haber llegado a la mayoridad**". *Argüello v. Argüello, supra,* pág. 71; *Key Nieves v. Oyola Nieves,* 116 DPR 261, 266 (1985) (Énfasis nuestro).

La Asamblea Legislativa de Puerto Rico aprobó la Ley Núm. 5 de 30 de diciembre de 1986, según enmendada, conocida como la *Ley orgánica de la Administración para el Sustento de Menores* (Ley Núm. 5), 8 LPRA sec. 501 *et seq.* Por otro lado, existen unas *Guías mandatorias para computar las pensiones alimentarias en Puerto Rico* (Guías mandatorias). La cuantía de la pensión alimentaria será fijada conforme dispone la Ley Núm. 5 y las Guías mandatorias. Ahora bien, dicha cuantía podrá reducirse o aumentarse de manera proporcional a las necesidades del alimentista y los recursos del alimentante. Art. 671 del Código Civil, 31 LPRA sec. 7567. No obstante, la determinación de reducir la cuantía de alimentos no le corresponde unilateralmente al alimentante ni puede realizarlo sin previa autorización judicial. *Íd.* sec. 7568. Véase *Santiago, Maisonet v. Maisonet Correa,* 187 DPR 550, 561 (2012). Además, la reducción de la cuantía de la pensión alimentaria tendrá aplicación prospectiva, desde el día en que se emitió

el dictamen autorizando la reducción. *Vázquez v. López,* 160 DPR 714, 728 (2003).

La Ley Núm. 5 establece que "[l]os pagos de pensión alimentaria [...] en atraso por más de treinta (30) días constituyen un gravamen por el monto de la deuda sobre todos los ingresos activos, bienes muebles e inmuebles del alimentante". 8 LPRA sec. 524. Dicho artículo le provee al tribunal el mecanismo de ordenar el embargo de cualesquiera fuentes del alimentante para asegurar la efectividad del pago de la pensión alimentaria. *Íd.*

Por otro lado, el Artículo 31 de la aludida Ley Núm. 5 plantea el desacato civil o criminal "como uno de los mecanismos para compeler al cumplimiento de las órdenes emitidas por el Tribunal, las emitidas por el Administrador o el Juez Administrativo y para hacer efectiva cualquier orden de pensión alimentaria para beneficio de un o una menor de edad". *Íd.* sec. 529. No obstante, este mecanismo debe ser utilizado con prudencia y es el último utilizado por un tribunal. *Rodríguez Avilés v. Rodríguez Beruff,* 117 DPR 616, 626-627 (1986).

-C-

En otro extremo, el Artículo 417 del Código Civil de Puerto Rico establece que una de las causas de la disolución del matrimonio es el divorcio. 31 LPRA sec. 6741. Por otra parte, la disolución del matrimonio por divorcio se puede declarar mediante sentencia judicial o escritura pública, es decir, divorcio en sede notarial. 31 LPRA sec. 6761. Esto, siempre y cuando el matrimonio no haya procreado hijos incapaces. *Exposición de Motivos,* Ley Núm. 55-2020. El divorcio en sede notarial se define como sigue:

> El matrimonio queda disuelto mediante el consentimiento de los cónyuges expresado en escritura pública, cuando al momento de otorgar la escritura al menos uno de los cónyuges ha residido en Puerto Rico durante el año inmediatamente anterior. Cuando el matrimonio esté regido por la sociedad de gananciales y haya bienes o deudas comunes, los cónyuges suscribirán un acuerdo que contendrá el inventario, avalúo, liquidación y adjudicación de los bienes y

deudas gananciales. Este acuerdo será protocolizado con la escritura de divorcio, sin que dicha protocolización tenga efectos de convertir el documento contentivo del acuerdo, en un instrumento público. **Cuando los cónyuges tengan hijos menores de edad comunes a ambos, deben establecer los términos y condiciones sobre los siguientes aspectos: custodia, patria potestad, alimentos, relaciones filiales y hogar seguro, como parte de una estipulación que será preparada por los representantes legales de cada cónyuge.** Dichos representantes legales harán constar a continuación de las firmas de los otorgantes en la estipulación, que su respectivo cliente fue debidamente informado de los derechos que le asisten, y que **en caso de no estar conforme con atender en ese acto los asuntos relacionados con el o los menores, siempre podrán hacerlo ante un tribunal.** Dicha estipulación se protocolizará con la escritura de divorcio. 31 LPRA sec. 6831 (Énfasis nuestro).

En lo atinente a la imposición de alimentos mediante una estipulación incorporada a la escritura sobre divorcio, un panel hermano determinó que el Código Civil no atiende directamente la forma en que se resolverá el incumplimiento con el pago de la pensión alimentaria, pero las partes siempre tienen disponible solventar los asuntos de los menores de edad por la vía ordinaria del Tribunal. Véase, KLAN202200241.

-IV-

En este caso de epígrafe, el señor Soto Ginés expuso como único señalamiento de error que resultaba improcedente que el TPI acogiera la *Demanda* sobre alimentos presentada por la señora Abadía Arroyo, quien había solicitado el remedio de desacato por el impago de una pensión fijada mediante estipulación realizada por el divorcio en sede notarial. Por otra parte, el recurrente adujo que el TPI había errado al determinar que el beneficio de la Administración de Veteranos no cubría los gastos de hospedaje, alimentos, libros, ropa y entretenimiento del menor, por lo que debía celebrar una vista evidenciaria para probar la existencia de una deuda por concepto de alimentos.

De un cuidadoso análisis del expediente ante nuestra consideración, concluimos que debemos expedir el auto de certiorari y confirmar la determinación del TPI.

Adviértase que, tal como determinó el TPI, las partes tienen disponible el proceso de *revisión de pensión alimentaria* para examinar la cuantía dispuesta en la estipulación realizada mediante el divorcio por sede notarial. No obstante, el señor Soto Ginés tiene el deber de pagar la cantidad adeudada por concepto de alimentos. Ninguna estipulación entre los progenitores puede soslayar el derecho fundamental del menor a recibir alimentos ni la responsabilidad ínsita de sus progenitores de proveerlos. Véase, *Díaz Rodríguez v. García Neris, supra,* pág. 717; *Pesquera Fuentes v. Colón Molina, supra,* pág. 103; *Argüello v. Argüello, supra,* pág. 69. A tenor con nuestro ordenamiento jurídico y la propia Cláusula 14 de la estipulación, el recurrido no podía modificar unilateralmente el pago de la cuantía de mil doscientos dólares ($1,200.00) mensuales de su obligación alimentaria por el mero hecho de que el menor recibió el beneficio de la Administración de Veteranos. Palmariamente la Cláusula 14 de la estipulación dispone: "**Se le advierte a Soto Ginés de la necesidad de solicitar al Tribunal el dejar sin efecto la pensión alimentaria**".[12] Conforme dispone el Código Civil, el derecho a recibir alimentos no está sujeto a transacción, 31 LPRA sec. 7535, ni puede reducirse unilateralmente por el alimentante sin previa autorización judicial. 31 LPRA sec. 7568.

Al señor Soto Ginés le correspondía solicitar al TPI una revisión de la pensión alimentaria para que el foro primario aquilatara si, **prospectivamente**, procedía o no la modificación de la cuantía de la pensión alimentaria. No podemos avalar que la modificación de la

---

[12] Apéndice de *Certiorari*, Anejo 3, págs. 41-49.

pensión alimentaria en la controversia de marras sea una determinación unilateral del peticionario.

-V-

Por las razones antes expresadas, *expedimos* el auto de *certiorari* y confirmamos la determinación del TPI.

Lo acordó y manda el Tribunal y lo certifica la Secretaria.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones