367 So.2d 1220 (1979)
Etoyle Yvonne Sandel BALLARD, Plaintiff-Appellant,
v.
Leon McGraw BALLARD, Defendant-Appellee.
No. 13750.
Court of Appeal of Louisiana, Second Circuit.
January 16, 1979.
Rehearing Denied February 28, 1979.
*1221 Love, Rigby, Dehan, Love & McDaniel, Shreveport by Kenneth Rigby, for plaintiff-appellant.
L. Edwin Greer and Law Offices of James A. Van Hook by James A. Van Hook, Shreveport, for defendant-appellee.
Before BOLIN, PRICE and HALL, JJ.
En Banc. Rehearing Denied February 28, 1979.
PRICE, Judge.
The appeal taken by plaintiff, Etoyle Yvonne Sandel Ballard, is concerned primarily with the validity of various corporate transactions of Ballard's, Inc., a commonly owned corporation now under the control of her divorced husband, Leon McGraw Ballard, and the injunctive relief requested by each party against the other relating to the corporate affairs.
A second issue raised by L. M. Ballard's answer to plaintiff's appeal is whether he is entitled to a reduction in the permanent alimony previously awarded plaintiff so that it will not exceed one-third of his income.
Plaintiff contends that the election of directors by the stockholders of Ballard's, Inc., on January 25, 1977, was invalid because at that time, which was prior to dissolution of the community by her divorce from defendant, there was an equal number of shares registered in the names of plaintiff and defendant. Therefore, her negative vote at the meeting prevented a legal election of the directors nominated by defendant. She contends that because of the foregoing circumstances the actions of those directors on February 15, 1977, in electing officers and adopting resolutions authorizing signatures on checking accounts were also invalid. She further contends the resolutions adopted at a meeting on April 25, 1977, authorizing a chattel mortgage and assignments of accounts to York Division of Borg-Warner[1] were invalid.
Conceding that plaintiff is correct that the election of directors on January 25 was illegal, the corporate matters transacted at the subsequent board meetings of February 15 and April 25 would nevertheless be valid. Plaintiff was a director prior to January 25 along with defendant and the corporate attorney, James Van Hook. Defendant and Van Hook were therefore members of both the existing and newly elected boards. As plaintiff was present at these meetings and cast a vote, although negative, there was valid action taken by the former board on these matters in the event the January 25 election was improper.
Plaintiff next contends that after the dissolution of the community by the March 24, 1977, divorce decree, defendant illegally issued 108 shares of stock to himself to give him a voting majority. She contends that upon dissolution of the community she and defendant became co-owners of all stock in the corporation, and any stock issued after that date should have been issued equally to the parties. She also contends his action in so doing was in violation of the injunction issued in the divorce decree to refrain from alienating property belonging to the community. On this basis she contends the stockholders' meeting of May 31, 1977, removing existing directors and naming their successors was illegal.
The trial judge concisely outlined the chronology of events leading up to the issuance of this additional stock to defendant *1222 in his reasons for judgment. The conclusions reached by him based on the facts found are in accord with our view of the law and we adopt them in affirming the court on this issue.
Some years ago, Mr. Jack D. Frizzell bought a number of shares of stock in the corporation thereby causing the corporation to have a total of three stockholders, i. e., Mr. Frizzell, Mr. Ballard, and Mrs. Ballard. The shares of stock purchased by Mr. Frizzell were purchased from Mr. Ballard. This purchase of stock was a credit transaction with Mr. Frizzell executing a promissory note for the purchase price of the stock and securing the payment of the note by pledging his stock to Mr. Ballard.
At about the same time, the attorney for the corporation prepared a stock purchase agreement. The shares of stock which were issued to Mr. Frizzell specified that those shares of stock were subject to the stock purchase agreement. However, the evidence showed that the stock certificates were issued on the 29th day of September, 1971 and the note to Mr. Ballard and the pledge agreement pledging those shares as securities therefor, were also executed on September 29, 1971. The stock purchase agreement was executed the following date, namely, September 30, 1971.
The purpose of that arrangement was to insure that the shares of stock which were sold by Mr. Ballard to Mr. Frizzell would be subject to return to Mr. Ballard under the pledge agreement, should Mr. Frizzell default on his obligation. We believe that the notation on the shares of stock that they were subject to a stock purchase agreement which was not even entered into until the day after the issuance of the stock certificate, was intended to insure that should Mr. Frizzell later desire to leave the corporation, with the idea of selling his stock to someone other than the corporation or Mr. and Mrs. Ballard, he would be prohibited from doing so by the stock purchase agreement. The intent was to retain total control and ownership in the Ballards.
When Mr. Frizzell defaulted on his obligation, the shares of stock reverted to Mr. Ballard and he was and is entitled to vote those shares of stock in Ballard's, Inc., so long, however, as he does not act in fraud of the rights of his former wife.
Accordingly, the corporate actions taken by Ballards, Inc., particularly the execution of the chattel mortgage in favor of York Division of Borg Warner was legally correct. We might add, not only was that action legally correct, but was a necessity, brought about by Mrs. Ballard's inquiries of York as to the solvency of Ballards, Inc., a step which caused much concern on the part of York/Borg Warner and, for a time, placed Ballards, Inc. in a very difficult business position with that company.
The record also supports the issuance of the injunction to restrict plaintiff's access and inspection of the books and records of the corporation except at such times and under such conditions as the court orders or as is allowed under the Business Corporation Law. Plaintiff's unannounced appearances at the business demanding immediate access to various records have been shown to have a detrimental effect on the business and the morale of the employees. Plaintiff has ample protection of her rights under the corporation laws, and the defendant, his agents, and employees continue to be under the injunction issued in the March 24 divorce judgment not to alienate community property except in the normal course of the corporation's business. We therefore find no error in the granting of the injunction pending settlement of the community.
It should be noted that there is pending on the same docket of this court an appeal from the judgment rendered in a separate proceeding ordering a partition of the community formerly existing between the parties, including the stock of the corporation.
Defendant contends the trial court erred in concluding that the prior award of permanent alimony in the sum of $1,800 per month in the divorce decree of March 24, 1977, does not exceed one-third of his income *1223 in contravention of La.C.C. Art. 160. The trial judge rejected defendant's request for a reduction because of its determination that defendant had a sufficient gross income in 1977, including salary, rent, and other personal benefits received by him from Ballard's Inc., to justify the continuation of the award without violation of the one-third rule of La.C.C. Art. 160. Defendant contends the trial court miscalculated the amount of fringe and personal benefits received by him in making its determination of his gross income.
The principal complaint by defendant is that in determining the value of personal benefits defendant received from the corporation over and above his salary, the trial court substantially relied on the schedules and summaries prepared by an accountant who was related to plaintiff and whose analysis of the corporate financial records was improper. The exhibits prepared by the accountant purported to show the "effective income" of defendant by listing expenditures made by the corporation which the accountant claims would be classified as income to defendant under Internal Revenue regulations. We do not find that the trial court gave the statements of the accountant the weight contended by defendant. The court analyzed this evidence as follows:
. . . Mrs. Ballard's accountant has testified as to sums which the accountant asserted should be included in the "effective income" of Mr. Ballard. (See Exhibit AD 1 through AD 9). The "statements of effective income" were devised by Mrs. Ballard's accountant using tax principles. That method sheds light on the manner in which the business is operated and upon assets available to Mr. Ballard. Nevertheless, we do not believe that all of these computations, which might be used in a tax case, can be literally applied in a case of this kind.
If the Court accepts the "statements of effective income" set forth in Exhibits AD 1 through AD 9, the Court would have to conclude that Mr. Ballard's gross income was in excess of $90,000 per year. Although it will be shown hereafter that Mr. Ballard has a substantial income, we cannot accept this figure.
The trial court simply found that defendant had not borne his burden of proving that he was not receiving the additional personal benefits which the corporate records indicate are inuring to him above his salary of approximately $50,000 for the fiscal year ending in September 1977. We are of the view that the trial court could properly consider such additional benefits in determining defendant's gross income for the purpose of relating the alimony award to the one-third restriction of La.C.C. Art. 160. The extent of this additional income is a question of fact that in this case depends on the weight and credibility of the testimony of defendant and plaintiff's accounting witness. As there is sufficient evidence in the record, if believed, to support the findings of the trial judge, we should not disturb the discretion accorded him under the jurisprudence.
For the foregoing reasons, the judgment is affirmed. Costs of this appeal are assessed equally to appellant and appellee.
NOTES
[1] Ballard's, Inc., is a wholesale air conditioning supply business distributing York products in Shreveport and Monroe.