ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| **EDGARDO JOSUÉ BARRETO RODRÍGUEZ**<br><br>Apelante<br><br>v.<br><br>**JOHANNA MONROIG TAVÁREZ**<br><br>Apelada | KLAN202300637<br><br><br><br><br><br>consolidado con | **APELACIÓN** procedente del Tribunal de Primera Instancia, Sala Superior de **San Juan**<br><br>Civil Núm.: **AR2023RF00247**<br><br>Sobre: Divorcio Ruptura Irreparable |
| **EDGARDO JOSUÉ BARRETO RODRÍGUEZ**<br><br>Apelado<br><br>v.<br><br>**JOHANNA MONROIG TAVÁREZ**<br><br>Apelante | KLAN202300994 | **APELACIÓN** procedente del Tribunal de Primera Instancia, Sala Superior de **San Juan**<br><br>Civil Núm.: **AR2023RF00247**<br><br>Sobre: Divorcio Ruptura Irreparable |

Panel integrado por su presidente, el Juez Figueroa Cabán, la Jueza Mateu Meléndez y la Jueza Boria Vizcarrondo.

Boria Vizcarrondo, Jueza Ponente.

**SENTENCIA**

En San Juan, Puerto Rico, a 1 de marzo de 2024.

En el recurso KLAN20230637, comparece el señor Edgardo Josué Barreto Rodríguez (señor Barreto Rodríguez) y nos solicita revisar una *Sentencia* emitida el 28 de junio de 2023 por el Tribunal de Primera Instancia, Sala Superior de San Juan (TPI).[1] Mediante el aludido dictamen, el TPI concedió una pensión alimentaria

---

[1] Apéndice de Apelación Civil, KLAN202300637, Anejo VIII, págs. 41-48. Archivada y notificada en autos el 29 de junio de 2023.

provisional (*pendente lite*) a favor de su ahora ex-esposa, la señora Johanna Monroig Tavárez (señora Monroig Tavárez) y señaló una vista para atender el reclamo de la pensión alimentaria de ex-cónyuge posterior a advenir firme la sentencia de divorcio.

A su vez, en el recurso KLAN202300994, acogido como *certiorari*, comparece la señora Monroig Tavárez y nos peticiona revisar una *Resolución* emitida el 16 de octubre de 2023 por el TPI.[2] En virtud del referido dictamen, el Foro Primario denegó la solicitud de la señora Monroig Tavárez para designar un apartamento sito en San Juan, Puerto Rico, como hogar seguro en beneficio de sus dos (2) hijos menores de edad, tras la disolución del matrimonio Barreto-Monroig, mediante divorcio.

Por los fundamentos que esbozaremos a continuación, con relación al recurso KLAN20230637, confirmamos la *Sentencia* emitida el 28 de junio de 2023 por el TPI. Concerniente al recurso KLAN202300994, expedimos el auto de *certiorari* y revocamos la *Resolución* emitida el 16 de octubre de 2023 por el Foro Primario.

Veamos los antecedentes fácticos y procesales que fundamentan nuestra determinación.

-I-

El caso de marras dimanó el 29 de marzo de 2023, fecha en que el señor Barreto Rodríguez presentó una *Petición individual de divorcio por ruptura irreparable de los nexos de convivencia matrimonial.*[3] En virtud del referido dictamen, el señor Barreto Rodríguez solicitó la custodia monoparental de sus hijos menores de edad: su hija de dieciocho (18) años de edad, quien es estudiante universitaria, y su hijo de diez (10) años de edad, quien padece de autismo severo tipo III y apraxia del habla.

---

[2] Apéndice de *Certiorari* Civil, KLAN202300994, Anejo II, págs. 8-12. Archivada y notificada en autos el 16 de octubre de 2023.
[3] Apéndice de Apelación Civil, KLAN202300637, Anejo I, págs. 1-4.

El 15 de mayo de 2023, la señora Monroig Tavárez contestó la demanda y, a su vez, presentó una reconvención.[4] Mediante esta, arguyó que las partes se casaron bajo la Sociedad Legal de Gananciales, se divorciaron, y nuevamente contrajeron matrimonio, pero bajo el régimen de absoluta separación de bienes mediante el otorgamiento de unas capitulaciones matrimoniales. Esto, sin haber liquidado los bienes adquiridos bajo la Sociedad Legal de Gananciales. Por otro lado, peticionó que se designara el apartamento sito en San Juan, Puerto Rico como el hogar seguro de su hijo, hasta que cese su incapacidad. Precisó que en el 2016 se mudó de su residencia en Hatillo a San Juan para buscarle ayuda a su hijo, incluyendo una escuela especializada a la que está actualmente matriculado. Adujo que, tras el nacimiento de su hijo, el señor Barreto Rodríguez le solicitó que renunciara a su empleo para dedicarse a tiempo completo a las necesidades especiales de su hijo, quien no es autosuficiente. La señora Monroig Tavárez estableció que esta situación provocó una dependencia exclusiva de los ingresos del señor Barreto Rodríguez. A su vez, manifestó que desde la presentación de la petición de divorcio, el señor Barreto Rodríguez mantiene el control absoluto de los ingresos devengados por la comunidad conyugal, dejándola desprovista del dinero necesario para cubrir sus necesidades básicas como alimentos, vivienda y cuidado médico. Por ello solicitó que se le asignara una pensión *pendente lite* no menor de mil quinientos dólares ($1,500.00) dólares mensuales. Asimismo, solicitó que, una vez se declarara disuelto el vínculo matrimonial, se fijara una pensión ex-cónyuge a su favor, dado que los cuidados que requiere su hijo le imposibilitan regresar al campo laboral.

---

[4] *Íd.*, Anejo II, págs. 5-11.

Posteriormente, el 5 de junio de 2023, el señor Barreto Rodríguez solicitó enmendar la *Demanda* a los fines de peticionar que se conceda la custodia compartida de sus hijos.

No obstante, el 14 de junio de 2023, la señora Monroig Tavárez radicó una contestación a la demanda enmendada y reconvención, en la que propuso que se le conceda la custodia monoparental y establezca un plan de relaciones paternofiliales a favor del señor Barreto Rodríguez. En su contestación a la reconvención, el señor Barreto Rodríguez se opuso a la pensión *pendente lite* dado que, desde su separación, le sufraga a la señora Monroig Tavárez el apartamento, la cuota de mantenimiento, la luz, el agua, el celular, el plan médico, la suscripción de *Netflix*, le provee un vehículo, las meriendas y los gastos escolares de su hijo, y la matrícula, el auto y la mesada de su hija.

Tras múltiples incidencias procesales, el 28 de junio de 2023, el TPI celebró una vista para discutir los asuntos del hogar seguro y de la pensión *pendente lite*. Durante la vista, se presentó el testimonio del señor Barreto Rodríguez y de la señora Monroig Tavárez. Transcurrida la vista, el señor Barreto Rodríguez solicitó la desestimación contra la prueba *non suit* por la pensión de la señora Monroig Tavárez.

En igual fecha, el Foro Primario emitió una *Sentencia* en la que declaró Con Lugar la *Demanda* sobre divorcio y decretó roto y disuelto el vínculo matrimonial existente entre el señor Barreto Rodríguez y la señora Monroig Tavárez.[5] En lo que nos concierne, el TPI se pronunció No Ha Lugar con respecto a la petición de desestimación contra la prueba *non suit* del señor Barreto Rodríguez y determinó que la señora Monroig Tavárez estableció la necesidad de la pensión *pendente lite*, en una suma de cien dólares semanales

---

[5] *Íd.*, Anejo VIII, págs. 41-48. Archivada y notificada el 29 de junio de 2023.

($100.00). En lo pertinente a la pensión ex-cónyuge, el TPI señaló una vista para una fecha posterior, en la que el divorcio haya advenido final y firme.

Ulteriormente, el 16 de octubre de 2023, el TPI emitió y notificó una *Resolución* en la que dispuso que la señora Monroig Tavárez no presentó prueba en torno a la necesidad de establecer el apartamento de San Juan como el hogar seguro de sus hijos menores de edad. El Tribunal fundamentó su decisión en que la señora Monroig Tavárez no evidenció si dicha vivienda era la residencia familiar, si era el único inmueble que pudiese satisfacer la necesidad de protección de los menores porque las partes poseían una vivienda en Hatillo, o si era el único inmueble de la madre. El Foro Primario entendió que las necesidades especiales del hijo de las partes no es el único criterio que se debe considerar para otorgar el hogar seguro.

No satisfecha con la determinación del TPI, el 24 de octubre de 2023, la señora Monroig Tavárez presentó una *Moción de Reconsideración*.[6] En igual fecha, el Foro Primario emitió una *Resolución* en la que declaró No Ha Lugar a la reconsideración.[7]

Inconforme con la *Sentencia* de divorcio emitida el 28 de junio de 2023, el 21 de julio de 2023, el señor Barreto Rodríguez compareció ante nos mediante un recurso de apelación, en el que planteó que el TPI cometió los siguientes errores:

> **PRIMER SEÑALAMIENTO DE ERROR:** ABUSÓ DE SU DISCRECIÓN EL TPI AL NO DECLARAR HA LUGAR LA SOLICITUD DE DESESTIMACIÓN *NON SUIT* DEL APELANTE EN CUANTO A LA RECLAMACIÓN DE UNA PENSIÓN *PENDENTE LITE* DE LA APELADA, A PESAR DE QUE LA APELADA NO PROBÓ SU NECESIDAD NI LA CAPACIDAD DEL APELANTE.

> **SEGUNDO SEÑALAMIENTO DE ERROR:** ERRÓ EL TPI AL NO DESESTIMAR EL RECLAMO DE PENSIÓN [EX-CÓNYUGE] EN LA CONTESTACIÓN A DEMANDA Y

---

[6] Apéndice de *Certiorari* Civil, KLAN202300994, Anejo III, págs. 13-16.
[7] *Íd.*, Anejo IV, págs. 18. Archivada y notificada el 25 de octubre de 2023.

RECONVENCIÓN EN UN PLEITO DE DIVORCIO A PESAR DE SER UNO PREMATURO.

Por su parte, en desacuerdo con la *Resolución* sobre hogar seguro emitida el 24 de octubre de 2023 por el TPI, el 6 de noviembre de 2023, la señora Monroig Tavárez compareció ante esta Curia apelativa y señaló que el Foro Primario incidió en cometer el siguiente error:

> **SEÑALAMIENTO DE ERROR:** ABUSÓ DE SU DISCRECIÓN EL TPI AL NO DECLARAR HA LUGAR LA SOLICITUD DE HOGAR SEGURO EN BENEFICIO DE LOS MENORES PROCREADOS ENTRE LAS PARTES SOBRE UNA PROPIEDAD QUE LAS PARTES SON CO PROPIETARIOS, DE LOS CUALES UNO DE LOS MENORES TIENE 10 AÑOS Y SUFRE DE AUTISMO SEVERO TIPO III, SIENDO ESTA RESIDENCIA EN LA QUE LA DEMANDADA-APELANTE RESIDE CON SUS HIJOS, LUEGO DE HABERSE DESFILADO PRUEBA A ESOS EFECTOS.

Así las cosas, el 8 de noviembre de 2023, esta Curia apelativa ordenó la consolidación de ambos recursos por estar relacionados ante sí.

Con el beneficio de la comparecencia de ambas partes, procedemos a pormenorizar la normativa jurídica atinente al caso ante nos.

-II-

-A-

En nuestro ordenamiento jurídico, los foros apelativos debemos brindar deferencia a las determinaciones de hechos formuladas por el tribunal de instancia. *Serrano Muñoz v. Auxilio Mutuo*, 171 DPR 717, 740 (2007). Esta deferencia yace en que el foro primario está en mejor posición que un tribunal apelativo para realizar la determinación de credibilidad. *Dávila Nieves v. Meléndez Marín*, 187 DPR 750, 771 (2013). Se le impone un respeto a la labor del tribunal de instancia en aquilatar la credibilidad, dado que los foros apelativos sólo poseemos récords mudos e inexpresivos. *Ramírez Ferrer v. Conagra Foods PR*, 175 DPR 799, 811 (2009); *Pérez*

*Cruz v. Hospital La Concepción*, 115 DPR 721, 728 (1984). Pues, en gran medida, la determinación de credibilidad depende de observar la manera en que la persona testigo declara, apreciar sus gestos, titubeos, contradicciones, entre otros factores que van formando gradualmente la convicción en cuanto a la verdad en la conciencia de la persona juzgadora. *Suárez Cáceres v. Com. Estatal Elecciones*, 176 DPR 31, 67-68 (2009). Cónsono con lo anterior, la Regla 42.2 de Procedimiento Civil, 32 LPRA Ap. V, dispone que "[l]as determinaciones de hechos basadas en testimonio oral no se dejarán sin efecto a menos que sean claramente erróneas, y se dará la debida consideración a la oportunidad que tuvo el tribunal sentenciador para juzgar la credibilidad de los testigos".

De esta forma, en ausencia de error manifiesto, prejuicio, parcialidad o pasión, los tribunales apelativos no intervendremos con la apreciación de la prueba, la adjudicación de credibilidad ni las determinaciones de hechos efectuadas por el foro primario. *Ortiz Ortiz v. Medtronic*, 209 DPR 759, 778 (2022); *Sucn. Pagán Berrios v. UPR y otros*, 206 DPR 317, 336 (2021); *Santiago Ortiz v. Real Legacy et al.*, 206 DPR 194, 219 (2021).

Se incurre en prejuicio, parcialidad o pasión, cuando la persona juzgadora actúa motivada "por inclinaciones personales de tal intensidad que adopta posiciones, preferencias o rechazos con respecto a las partes o sus causas que no admiten cuestionamiento, sin importar la prueba recibida en sala e incluso antes de que se someta prueba alguna". *Dávila Nieves v. Meléndez Marín, supra*, en la pág. 782. Además, "el error manifiesto ocurre cuando el foro apelativo queda convencido de que se cometió un error, a pesar de que haya evidencia que sostenga las conclusiones de hecho del tribunal, porque existe un conflicto entre las conclusiones y el balance más racional, justiciero y jurídico de la totalidad de la evidencia recibida". *Ortiz Ortiz v. Medtronic, supra,* en la pág. 779. De

otra forma, únicamente se alterará el dictamen del tribunal de instancia en una circunstancia de error manifiesto cuando, de un examen detenido de toda la prueba, el foro apelativo esté convencido que la persona juzgadora descartó injustificadamente elementos probatorios importantes o fundó su criterio en testimonios de escaso valor o inherentemente improbables o increíbles. *C. Brewer PR, Inc. v. Rodríguez*, 100 DPR 826, 830 (1972). Por ello, nuestra facultad para sustituir el criterio del foro primario está limitada a las instancias en las que, a la luz de la prueba admitida, no existe base suficiente para apoyar su determinación. *Ortiz Ortiz v. Medtronic*, *supra*.

Por otro lado, los tribunales apelativos nos encontramos en la misma posición del foro primario para evaluar la prueba documental o pericial que fundamentan las determinaciones de hecho. *Sucn. Rosado v. Acevedo Marrero*, 196 DPR 884, 918 (2016); *González Hernández v. González Hernández*, 181 DPR 746, 777 (2011).

-B-

El Código Civil de Puerto Rico dispone unas medidas cautelares provisionales respecto a los cónyuges, durante el proceso de divorcio, en atención del interés familiar más necesitado de protección, entre estos:

> […]
> (b) fijar la contribución de cada cónyuge para atender las necesidades y las cargas de la familia durante el proceso, incluidos los gastos del litigio, y disponer las garantías, depósitos, retenciones u otras medidas cautelares necesarias para asegurar su efectividad;
> (c) señalar los bienes gananciales o comunes que, previo inventario, se entregarán a uno u otro cónyuge para su sustento y establecer las reglas para su administración y disposición, hasta la disolución del matrimonio y la liquidación de su régimen económico[.] 31 LPRA sec. 6794.
> […]

En lo concerniente a la pensión *pendente lite*, el Artículo 454 del Código Civil, precisa que durante el proceso de divorcio:

El tribunal puede imponer el pago de una pensión alimentaria al cónyuge que tiene bienes propios en beneficio del que no cuenta con recursos económicos suficientes para su sustento durante el proceso. En este caso, la cuantía fijada debe ser proporcional a la capacidad económica del cónyuge a quien se impone la pensión y conforme a la posición social de la familia. **La pensión debe cubrir las necesidades apremiantes y esenciales del cónyuge que la reclama y los gastos del litigio.** El cónyuge alimentante no tiene derecho a reclamar la restitución de lo pagado por ambos conceptos. *Íd.*, sec. 6801. (Énfasis nuestro).

En la petición sobre pensión *pendente lite,* se debe demostrar:

(1) Que hay pendiente un juicio de divorcio;
(2) que [el] cónyuge no cuenta con suficientes recursos propios para vivir durante el juicio; y
(3) que el otro cónyuge o la sociedad de bienes gananciales posee bienes los cuales administra de facto uno de los cónyuges. R. E. Ortega Vélez, *Lecciones de Derecho de Familia con referencia al Código Civil 2020*, San Juan, Puerto Rico, 2023, págs. 145-146.

La otorgación de la pensión *pendente lite* como medida provisional tiene vigencia hasta que la sentencia de divorcio advenga firme, excepto el tribunal disponga algo contrario. *Íd.*, sec. 6804. Por otro lado, la pensión *pendente lite* no admite interrupción ni suspensión mientras se ventile el recurso en el que se cuestiona su validez. *Íd.*, sec. 6805. No obstante al carácter provisional de la pensión *pendente lite*, el deber de alimentar entre cónyuges continúa posterior al decreto de divorcio mediante la pensión alimentaria del ex-cónyuge.

-C-

Con respecto a la pensión alimentaria del ex-cónyuge, el Tribunal Supremo de Puerto Rico estableció que está revestida del más alto interés público, puesto que responde al derecho fundamental de todo ser humano en existir y desarrollar plenamente su personalidad. *Correa Márquez v. Juliá Rodríguez*, 198 DPR 315, 326 (2017); *González v. Suárez Milán*, 131 DPR 296, 301 (1992). Esto responde a que, "disuelto el matrimonio y, en consecuencia, haber desaparecido el deber de socorro mutuo entre los cónyuges como efecto personal del matrimonio, uno de ellos puede caer en

una situación de indigencia y necesidad tal, que le impida hacer frente a las exigencias vitales". R. E. Ortega Vélez, *Los efectos económicos del divorcio*, Puerto Rico, First Book Publishing of P.R., 1997, págs. 125-126. En tal circunstancia, los ex-cónyuges son los primeros llamados en responder por las necesidades económicas de los otros. *Correa Márquez v. Juliá Rodríguez, supra*. Esta reclamación de pensión alimentaria del ex-cónyuge puede realizarse mediante "**[una] petición en la demanda de divorcio, o por moción en el pleito de divorcio o mediante acción separada**". R. E. Ortega Vélez, *op. cit.*, pág. 129. (Énfasis nuestro).

El Artículo 466 del Código Civil establece que el tribunal puede concederle a la persona que carece de medios suficientes para vivir una pensión alimentaria que provenga de los ingresos o bienes del otro ex-cónyuge, sea por un plazo determinado o hasta que el cónyuge alimentista pueda valerse por sí mismo o adquiera medios adecuados y suficientes para su sustento. *Íd.*, sec. 6813. El criterio principal es la necesidad económica del ex-cónyuge alimentista y la capacidad económica del ex-cónyuge alimentante, como consecuencia del divorcio. *Correa Márquez v. Juliá Rodríguez, supra.*

-D-

En otro extremo, el Artículo 477 del Código Civil dispone que cualquiera de los ex-cónyuges o de los hijos bajo su patria potestad, podrá solicitar el derecho a permanecer en la vivienda que constituye el hogar principal del matrimonio y de la familia. *Íd.*, sec. 6851. Este derecho está disponible desde que se necesite, sea en la petición de disolución del matrimonio, durante el proceso o posterior a dictarse sentencia. *Íd.* El antes aludido articulado establece:

> En los casos donde la vivienda familiar principal sea privativa de cualquiera de los [ex-cónyuges] y exista otra vivienda perteneciente a la Sociedad de Gananciales, el Tribunal podrá establecer como vivienda familiar la propiedad perteneciente a la Sociedad de Gananciales.
> En los casos en que no exista una vivienda perteneciente a la Sociedad de Gananciales, el tribunal

determinará como se cumplirá con el derecho a hogar seguro". *Íd.*

Al momento de conceder el derecho a permanecer en la vivienda familiar, el tribunal debe considerar:

> **(a) los acuerdos de los cónyuges sobre el uso y el destino de la vivienda durante la vigencia del matrimonio y después de su disolución;**
> **(b) si el cónyuge solicitante mantiene la custodia de los hijos menores de edad;**
> **(c) si el cónyuge solicitante retiene la patria potestad prorrogada o la tutela de los hijos mayores incapacitados o con impedimentos físicos que requieren asistencia especial y constante en el entorno familiar;**
> (d) si los hijos mayores de edad, pero menores de veinticinco (25) años, permanecen en el hogar familiar mientras estudian o se preparan para un oficio;
> **(e) si la vivienda familiar es el único inmueble que puede cumplir razonablemente ese propósito dentro del patrimonio conyugal, sin que se afecte significativamente el bienestar óptimo de los beneficiados al momento de su concesión con más necesidad de protección;**
> (f) si el cónyuge solicitante, aunque no tenga hijos o, de tenerlos, no vivan en su compañía, necesita de esa protección especial, por su edad y situación personal; y
> **(g) cualquier otro factor que sea pertinente para justificar el reclamo.** *Íd.*, sec. 6852. (Énfasis nuestro).

A saber, la otorgación del derecho a permanecer en la vivienda familiar es una determinación que se debe tomar a tenor con las circunstancias particulares de cada caso. *Rodríguez v. Pérez*, 161 DPR 637, 652 (2004). No obstante, la determinación judicial debe ser lo que proceda en justicia a los fines de salvaguardar el bienestar de los menores, con primacía sobre el interés propietario del otro ex-cónyuge. *Candelario Vargas v. Muñiz Díaz*, 171 DPR 530, 540-544 (2007); *Cruz Cruz v. Irizarry Tirado*, 107 DPR 655, 660 (1978). En tal sentido, el máximo foro judicial estableció:

> Hemos reconocido que el derecho de dominio no es atribución absoluta de su titular y que está supeditada a intereses sociales de orden superior, significativamente la protección de la vivienda. Hemos sostenido que en Puerto Rico, como en toda sociedad civilizada, hay un eminente interés social en proteger y fomentar la adquisición por cada familia de una vivienda segura, cómoda y adecuada, reflejado en una política pública de claros perfiles en la profusa legislación aprobada a lo largo de los a[ñ]os. *Cruz Cruz v. Irizarry Tirado, supra,* en las págs. 660-661.

A su vez, el derecho a hogar seguro se extiende a la vivienda familiar habitual cuando constituya un bien privativo del padre no custodio. *Candelario Vargas v. Muñiz Díaz, supra*, en la pág. 544.

Esbozada la normativa jurídica atinente a los hechos de este caso, procedemos a resolver.

-III-

En el recurso KLAN202300637, el señor Barreto Rodríguez nos presenta dos (2) señalamiento de errores atribuidos al TPI, que por estar intrínsecamente imbricados, los discutiremos en conjunto. En síntesis, el señor Barreto Rodríguez estableció que erró el TPI al no desestimar los reclamos de pensión *pendente lite* y ex-cónyuge de la señora Monroig Tavárez.

No tiene razón el señor Barreto Rodríguez. Tras un sosegado análisis de los errores planteados, así como de los documentos que obran en el expediente ante nos, incluyendo la transcripción de la vista celebrada el 28 de junio de 2023, concluimos que el TPI no actuó con error manifiesto, perjuicio, parcialidad o pasión en su determinación. Por esta razón, como Curia apelativa, no intervendremos con la apreciación de la prueba, la adjudicación de credibilidad ni las determinaciones de hechos efectuadas por el TPI. Atisbamos que el Foro Primario no actuó mediante inclinaciones personales que lo indujeran a adoptar posiciones, preferencias o rechazos con respecto a las partes en la petición de pensión *pendente lite* y ex-cónyuge de la señora Monroig Tavárez. De un examen integral de la prueba documental y testifical, resulta palpable que la determinación del TPI referente a pensión *pendente lite* y ex-cónyuge de la señora Monroig Tavárez no demuestra estar en conflicto con el balance más racional, justiciero y jurídico de la totalidad de la evidencia recibida por las partes. Concluimos que existe base suficiente para sostener la pensión *pendente lite*

otorgada a la señora Monroig Tavárez y para señalar una vista posterior a advenir firme el divorcio para la pensión alimentaria de la ex-cónyuge Monroig Tavárez. Sépase que en la petición sobre pensión *pendente lite* se debe demostrar que está pendiente un proceso de divorcio, que el cónyuge en necesidad no cuenta con suficientes recursos propios para vivir durante el juicio y que el otro cónyuge posee bienes que administra. Atisbamos que en la vista de divorcio, la señora demostró a satisfacción del Tribunal todos los elementos para la otorgación de dicha pensión *pendente lite*. Por otro lado, en la *Sentencia* apelada, correctamente el Foro *a quo* aplicó la normativa jurídica de atender el reclamo de pensión alimentaria de la ex-cónyuge, posterior a la fecha en que adviniese firme la sentencia de divorcio. Igualmente, la señora Monroig Tavárez podía realizar su reclamo durante el proceso de divorcio.

En el recurso KLAN20230994, la señora Monroig Tavárez señaló que el TPI erró al declarar no ha lugar la solicitud de hogar seguro en beneficio de los menores de edad procreados entre las partes.

Luego de examinar el expediente ante nuestra consideración, determinamos expedir el auto de *certiorari* y revocar la determinación del TPI para evitar un fracaso irremediable de la justicia. Durante la vista sobre divorcio, quedó flagrantemente establecido que el señor Barreto Rodríguez y la señora Monroig Tavárez poseen una vivienda en Hatillo, no obstante, tras advenir en conocimiento de las condiciones especiales de su hijo, adquirieron el apartamento en San Juan para buscarle tratamiento y una escuela especializada que atienda sus necesidades. En concreto, el propósito de la adquisición del apartamento fue otorgarle la asistencia especial que requiere la salud y el bienestar del hijo de las partes. Durante la vista, se demostró que la hija de las partes cursa estudios universitarios en San Juan, mientras que el hijo

asiste a una escuela especializada en San Juan y recibe tratamiento médico en el área metropolitana, por lo que a la señora Monroig Tavárez se le ha facilitado residir en el apartamento de San Juan, antes y durante el proceso de divorcio. Por consiguiente, los hechos antes aludidos son razón suficiente para conceder el derecho de los menores de edad a permanecer en la vivienda familiar por el uso y el destino del apartamento en San Juan durante la vigencia del matrimonio y el proceso de divorcio. Por ello, erró el TPI al entender que el testimonio presentado durante la vista no fue suficiente para hacer una determinación de hogar seguro. Así las cosas, revocamos la *Resolución* recurrida y, en consecuencia, declaramos Ha Lugar la petición de hogar seguro presentada por la señora Monroig Tavárez, sobre el apartamento sito en San Juan, Puerto Rico.

-IV-

Por los fundamentos que anteceden, confirmamos la *Sentencia* emitida el 28 de junio de 2023 por el TPI, concediendo una pensión *pendente lite* a favor de la señora Monroig Tavárez. A su vez, expedimos el auto de *certiorari* y revocamos la *Resolución* emitida el 16 de octubre de 2023 por el TPI, en la que se denegó la solicitud de designar el apartamento de San Juan como hogar seguro en beneficio de los menores de edad habidos en el matrimonio Barreto-Monroig.

Se devuelve el caso al TPI para que continúe con los procedimientos, a tenor con lo resuelto por esta Curia Apelativa.

Lo acordó y manda el Tribunal y lo certifica la Secretaria.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones